**Cecil H. ROBINSON, Appellant,**

v.

**WARDEN, MARYLAND HOUSE OF CORRECTION, Appellee.**

**No. 71–1234.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1971.

Decided Feb. 10, 1972.

Michael W. Smith, Richmond, Va. (court-appointed counsel) [Christian, Barton, Parker, Epps & Brent, Richmond, Va., on brief], for appellant.

John P. Stafford, Jr., Asst. Atty. Gen. of Maryland [Francis B. Burch, Atty. Gen. of Maryland, and Alfred J. O'Ferrall, III, Asst. Atty. Gen., on brief], for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Cecil H. Robinson challenges the constitutionality of Maryland's sentence review act because it allows the reviewing panel to increase a prisoner's sentence. He contends that the increased sentence imposed on him after review violated the constitutional guarantee against double jeopardy, denied him due process of law, and constituted cruel and unusual punishment. The district court denied his petition for a writ of habeas corpus. We affirm.

Robinson was convicted in the Criminal Court of Baltimore City for robbery with a deadly weapon and assault with intent to commit murder. He was sentenced to two concurrent terms of 10 years. His conviction was affirmed by the Maryland Court of Special Appeals, and certiorari was denied by the Maryland Court of Appeals. While his appeal was pending, Robinson filed an application for a review of his sentence in accordance with § 132 of Article 26 of the Code of Maryland.[1] Following a hearing,

---

1. "Right to review of sentence.

Unless no different sentence could have been imposed or unless the sentence was imposed by more than one trial judge, every person convicted of a crime after July 1, 1966, by any trial court of this State and sentenced to serve, with or without suspension, a total of more than two (2) years imprisonment in any penal or correctional in-

the sentence review panel, stating its reasons, increased Robinson's sentence for assault with intent to commit murder from 10 to 15 years. This increase is expressly authorized by § 134 of Article 26.[2] These provisions of the Maryland law were patterned after the Massachusetts act,[3] which was held to be constitutional in Walsh v. Picard, 446 F.2d 1209 (1st Cir. 1971), and Hicks v. Com. of Massachusetts, 345 Mass. 89, 185 N.E.2d 739 (1962), cert. denied, 374 U.S. 839, 83 S.Ct. 1891, 10 L.Ed.2d 1060 (1963).[4]

## I

Although the Supreme Court has not yet considered the constitutionality of sentence review, we believe that North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969), forecloses Robinson's double jeopardy claim.[5] There the Court held that the guarantee against double jeopardy does not prohib-

it harsher punishment after reconviction of a defendant who has obtained a retrial. The Court rested its conclusion on "the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." 395 U.S. at 721, 89 S.Ct. at 2078. In reaching this conclusion, it relied on well-established precedent permitting retrials, when sought by defendants, because of society's dual interest in assuring accused persons a fair trial and punishing the guilty. United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

Although a petition under the Maryland act does not serve the same function as an application for retrial, it fully reopens the propriety of the sentence at the behest of the defendant who seeks review. When a prisoner initiates review, the state has an interest in assuring that punishment for similar criminal conduct is uniformly imposed. This in-

stitution in this State, or sentenced to death, shall be entitled to have the sentence reviewed by a panel of three (3) or more trial judges of the judicial circuit in which the sentencing court is located; provided, however, that no person shall have the right to have any sentence reviewed more than once pursuant to this section. Whether or not he is a trial judge of the judicial circuit in which the sentencing court is located, the judge who sentenced the convicted person shall be one of the members of the panel, whenever he is determined to be available by the chief judge of the judicial circuit in which the sentencing court is located, unless this requirement is eliminated or amended by an appropriate rule of the Court of Appeals."
Md.Code Ann. Art. 26, § 132 (1966).

2. Section 134 provides in part:
"The panel shall have the right to require the Department of Parole and Probation to investigate, report, and make recommendations with regard to any such application for review. The panel shall consider each application for review and shall have the power, with or without holding a hearing, to order a different sentence to be imposed or served, including, by way of illustration and not by way of limitation, an increased or decreased sentence."

3. Mass.Ann.Laws ch. 278, §§ 28A–28D (Cum.Supp.1971).

4. Connecticut and Maine also authorize increased sentences when a prisoner seeks review. Conn.Gen.Stat.Ann. §§ 51–194 to –197 (1960); Maine Pub.Laws tit. 15, §§ 2141–2144 (Cum.Supp.1970). The constitutionality of the Connecticut statute was upheld in Kohlfuss v. Warden, 149 Conn. 692, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S.Ct. 298, 9 L.Ed.2d 235 (1962).
 According to ABA Standards, Appellate Review of Sentences 67–158 (Approved Draft, 1968), the following states do not allow review panels to impose more severe sentences: Arizona, Florida, Hawaii, Illinois, Iowa, Nebraska, New York, Oregon, and Tennessee. Military courts are similarly restricted. Since 1966 England, which formerly permitted increased punishment on review, now allows only approval or reduction of sentences. Thirty-seven states and the federal government lack sentence review, although the ABA Standards strongly recommend it.

5. The fifth amendment provides:
"[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ."
This guarantee is enforceable against the states through the fourteenth amendment. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

terest embraces correcting sentences that are too lenient, as well as those that are too severe.[6] The scope of the double jeopardy clause, as defined in *Pearce*, provides authority for holding that this interest is served by increasing as well as decreasing punishment when a defendant petitions for review. There is no sound reason for interpreting the double jeopardy clause, as does *Pearce*, to allow an increased sentence on retrial when reversible error goes to the heart of the case, but to deny an increased sentence on review when the error affects only the propriety of the punishment. *See* Walsh v. Picard, 446 F.2d 1209, 1211 (1st Cir. 1971).

In support of his double jeopardy claim, Robinson relies primarily on Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); and Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874). Certain principles stated in these cases and dicta they contain support Robinson's argument in part, but they do not establish that the increased sentence he received violated the guarantee against double jeopardy.

*Green* held that a prisoner charged with first degree murder, but convicted of second degree murder, could not be retried for first degree murder after his conviction for second degree murder had been set aside on appeal and the case remanded for a new trial. The Court ruled that Green's jeopardy for first degree murder ended when the jury was discharged. Robinson seizes on the Court's explanation that Green neither waived his defense nor prolonged his original jeopardy when he appealed his conviction of second degree murder.

■ The result we reach is not dependent on waiver or the concept of continuing jeopardy. It rests instead on the lesson *Pearce* teaches—the double jeopardy clause is not an absolute bar to increased punishment. Unbroken precedent spanning many years, and now constituting a "well-established part of our constitutional jurisprudence," demonstrates that the double jeopardy clause does not preclude reassessment of every aspect of a criminal trial at the defendant's behest. North Carolina v. Pearce, 395 U.S. at 720, 89 S.Ct. at 2078; Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L.J. 606, 625 (1965). Moreover, Robinson's position differs fundamentally from Green's. Robinson was not acquitted of the crime for which he is now being punished. For the same reason, *Green* was held inapplicable in *Pearce*. 395 U.S. at 720 n. 16, 89 S.Ct. 2072.

Robinson relies on dictum in United States v. Benz, 282 U.S. 304, 307, 51 S.Ct. 113, 75 L.Ed. 354 (1931), to the effect that while a court may reduce a sentence, the double jeopardy clause bars an increase.[7] *Benz*, however, must be read in the light of Ex parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874), which is cited as authority for the dictum. *Ex parte Lange* supports Robinson's assertion that the double jeopardy clause protects against multiple punishment as well as multiple trials, but apart from this principle, the case

---

6. We express no opinion as to the wisdom of authorizing review panels to increase as well as decrease sentences because in our view this is a legislative function. Arguments for and against it are set forth in ABA Standards, Appellate Review of Sentences 2–5, 55–66 (Approved Draft, 1968).

7. *Benz* established that a court can reduce a partially executed sentence during the term in which it was imposed. In the course of discussing a court's plenary power over judgments entered during the same term, the Court said:

"The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution. . . ." 282 U.S. at 307, 51 S.Ct. at 114.

and the dictum found in *Benz* afford him no relief. Lange was convicted of violating a statute which prescribed a penalty of either imprisonment or a fine, but the court inadvertently imposed both. After Lange paid his fine, he sought to be discharged from prison. The court then vacated the sentence of both a fine and imprisonment and sentenced Lange to prison. Again Lange applied for a writ of habeas corpus. The Supreme Court held that since Lange had been penalized by a fine, one of the alternative penalties prescribed by the statute, the double jeopardy clause protected him from twice being punished by the subsequent imposition of a prison sentence.

█ The increase in Robinson's punishment is not similar to Lange's. When Robinson's sentence was reviewed, he had not served his initial sentence. While the Maryland statute authorized the review panel to increase his sentence, it did not subject him to multiple punishment by superimposing a new sentence on one already served. Furthermore, the Court was careful to note in *Ex parte Lange* that the double jeopardy clause does not bar retrial on writ of error prosecuted by the accused, a situation which, as we have previously mentioned, is analogous to Robinson's. We find no suggestion that by dictum the *Benz* Court intended to broaden *Ex parte Lange's* interpretation of the double jeopardy clause.

## II

Robinson contends he was denied due process of law because the review panel's power to increase a sentence, coupled with its discretion to deny withdrawal of a petition for review,[8] unconstitutionally subjects a prisoner to a "grisly choice" in deciding whether to appeal his sentence. He relies on that part of North Carolina v. Pearce, 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which holds that due process requires that a defendant's appeal be unfettered by apprehension that a new trial will expose him to retaliation in the form of an increased sentence. To implement this safeguard, the Court ruled that an increased sentence on retrial could be imposed only if the record showed, and the court found, that more severe punishment was justified by the defendant's conduct occurring after he was originally sentenced. Robinson, urging that he is entitled to the same protection, complains that the review panel did not have any derogatory evidence concerning his conduct after he was originally sentenced and that it simply considered information available to the sentencing judge.

█ The *Pearce* rule was designed to enable a defendant who was wrongfully convicted to seek redress without being deterred by fear of reprisal. However, a prisoner seeking sentence review is not faced with the dilemma of either remaining in jail under an invalid conviction or of risking harsher punishment if he is convicted on retrial. Sentence review deals only with the justness of punishment, and a statute such as Maryland's gives adequate notice that the review panel may find sentences unjust because they are too short, as well as because they are too long. The very purpose of sentence review is to reconsider and reevaluate information bearing on the appropriateness of the prisoner's punishment. Ideally, review should quickly follow sentencing, and it is not designed to examine a defendant's conduct in the interim. Therefore, the

---

8. Md.Code Ann., Rule 762(b) (5) (Cum. Supp.1971) provides as follows:
"Withdrawal of Application.
    A convicted person may withdraw his application for review of a sentence at any time prior to receipt of notice of a hearing thereon, but not thereafter except by permission of the review panel.

A withdrawal shall be in writing, signed by the convicted person, and shall be filed with the clerk of the sentencing court. An election to withdraw is final and shall terminate all rights of the convicted person to have the sentence reviewed under the Review of Criminal Sentences Act."

sanction fashioned in *Pearce* to assure due process is inappropriate for sentence review.

*Pearce's* ruling on due process is, however, not altogether inapplicable to sentence review. Though a state need not provide sentence review, if it does, it may not discourage applications for relief by vindictively imposing harsher sentences on those who exercise their statutory right. The enlightened policy of a legislature cannot be thwarted in this manner by a reviewing court. But there is in this record no suggestion that the state acted vindictively. Robinson has not shown that the 15-year sentence he received on review is excessive when compared to sentences imposed under similar circumstances. Nor does he point to a pattern of increased sentences from which one might infer an intent on the part of review panels to chill applications for relief.

*Pearce* stops short of holding the due process clause is violated by every increased sentence on retrial, and we believe that its ruling should not be extended to absolutely prohibit a review panel from imposing an increased sentence. We conclude, therefore, that the statute on its face, and as it was applied in this case, does not violate the due process clause of the fourteenth amendment.

### III

Robinson's claim that his increased sentence abridged the Constitution's prohibition against cruel and unusual punishment is clearly without merit.[9] The 15-year sentence was within the range of punishment allowed by Maryland law, and the sentence was not disproportionate to the crime. *See* Weems v. United States, 217 U.S. 349, 368, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

Affirmed.

9. The eighth amendment provides:
   "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
   The eighth amendment's prohibition against cruel and unusual punishment is

applicable to the states through the fourteenth amendment. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1962).