Billy Ray **HALL**, Petitioner,

v.

O. M. **BOSTIC**, Monroe Prison Unit, and the Attorney General of the State of North Carolina, Respondents.

No. C–C–73–218.

United States District Court, W. D. North Carolina, Charlotte Division.

Dec. 23, 1974.

Richard N. League, Asst. Atty. Gen. of N. C., Raleigh, N. C., for respondents.

## ORDER

McMILLAN, District Judge.

Billy Ray Hall, petitioner, pleaded guilty to charges of forgery at the September, 1968, session of the Gaston County, North Carolina Superior Court, and was sentenced to seven years in prison. The sentence was suspended for five years and Hall was placed on probation for five years under the supervision of the North Carolina Probation Commission. He served four and one-half of the five years of probation under conditions of probation as authorized by Chapter 15, § 199, of the General Statutes of North Carolina. That statute reads as follows:

§ 15–199. Conditions of probation. —The court shall determine and may impose, by order duly entered, and may at any time modify the conditions of probation and may include among them the following, or any other: That the probationer shall:

(1) Avoid injurious or vicious habits;

(2) Avoid persons or places of disreputable or harmful character;

(3) Report to the probation officer as directed;

(4) Permit the probation officer to visit at his home or elsewhere;

(5) Work faithfully at suitable, gainful employment as far as possible and save his earnings above his reasonably necessary expenses;

(6) Remain within a specified area;

(7) Deposit with the clerk of the court a bond for his appearance at such time or times as the court may direct. In the event the probationer is unable to provide the bond otherwise, the court may require the bond to be paid in cash from his earnings in such installments and at such intervals as the court may direct;

(8) Deposit with the clerk of the court from his earnings a savings account in such installments and at such intervals as the court may direct; and the clerk shall thereupon deposit such funds in the savings account in an institution whose accounts are insured by an agency of the federal government and the principal plus interest earned shall be paid to the probationer upon his discharge or earlier upon order of the court;

(9) Pay a fine in one or several sums as directed by the court;

(10) Make reparation or restitution to the aggrieved party for the damage or loss caused by his offense, in an amount to be determined by the court;

(11) Support his dependents;

(12) Waive extradition to the State of North Carolina from any jurisdiction in or outside the United States;

(13) Violate no penal law of any state or the federal government and be of general good behavior;

(14) With the defendant's consent and with a statement of the availability of jail accommodations, he may be required to report to the sheriff of the county or to the chief of police of any municipality or other law enforcement officer and submit himself to be incarcerated in the county or municipal jail or other designated place of confinement during weekends or at such other times or intervals as the court may direct. The court may, with the consent of the defendant, require the surrender of his earnings less standard payroll deductions required by law, to the county board of public welfare or other responsible agency. After deducting from the earnings the amount determined to be the cost of the defendant's keep while incarcerated, the balance shall be applied as may be needed for the support and maintenance of the defendant's dependents, and any sum remaining shall be released to the defendant upon the expiration of his suspension or at other times as the court may direct. Upon revocation of probation or suspension of sentence, the court shall certify in the judgment of revocation the time or number of days the probationer was incarcerated and such time shall be deducted from the term of the sentence suspended, and so stipulated in the commitment. Provided, that in no event shall the number of days of incarceration prior to revocation exceed the length of the original suspended sentence.

On April 13, 1973, after Hall had served four and one-half years of his probationary term, under the above conditions, his probation was revoked by Judge Friday in Gaston County Superior Court, and he was ordered to serve *his entire original seven-year sentence* in prison (with work release recommended should he attain honor grade). The revocation judgment found that he had failed to meet four of the conditions of

probation by (1) failing to keep a steady job; (2) changing addresses without informing his probation officer; (3) failing to support his dependents and (4) being drunk in public.

Shortly afterward Hall filed a petition for habeas corpus, but it was dismissed without prejudice for failure to exhaust state remedies. The petition was renewed and on September 10, 1973, it was allowed to be filed in forma pauperis. State remedies have been exhausted.

Petitioner claims that he is entitled to credit on his active sentence for the four and one-half years which he spent on probation. Failure to give this credit, he asserts, subjects him to double jeopardy and denies him due process of law.

Termination of probation is dealt with in General Statutes § 15–200, which provides that a defendant charged with violation of probation shall be brought before a Superior Court judge, who

"may revoke the probation or suspension of sentence, and shall proceed to deal with the case as if there had been no probation or suspension of sentence . . .

". . . [C]oncurrent jurisdiction is . . . vested in the . . . judge . . . to discharge such probationer from probation, to continue, extend, suspend or terminate the period of probation of such probationer, and to revoke probation and enter judgment or put into effect suspended sentences of probation judgment, for breach of the conditions of probation, . . . ."

The full text of North Carolina General Statutes § 15–200 is appended.

■ A question immediately arises whether the statute requires automatic reinstatement of the full original sentence when probation is revoked, or whether the judge has discretion to impose other conditions or punishment short of the full balance of the original active term. On the face of it, the statute appears to allow wide latitude to the judge; and the order revoking proba-

tion, signed by Judge Friday on March 11, 1973, is couched in its concluding paragraph as being "in the discretion of the court . . ."

However, the actual commitment was under a printed form entitled "Judgment and Commitment upon Revocation of Suspension of Sentence." The operative parts of this commitment order are all printed. The "Order" part of the commitment reads as follows:

"It is adjudged that defendant has breached a valid condition upon which the execution of said sentence was suspended, and it is ORDERED that such suspension be revoked and that said defendant be imprisoned:

"For the term of [     ] years.

"In the" [correctional institution]

A copy of the printed commitment in Hall's case is attached hereto. The entire arrangement and text of that document, including its title, obviously presumes that commitment for the entire original term is the automatic result of a revocation of probation.

Such in fact is the interpretation placed upon the North Carolina statute by the Attorney General of North Carolina in Hewett v. North Carolina, 415 F.2d 1316 (4th Cir. 1969), and the interpretation apparently placed upon the statute by the late Chief Justice R. Hunt Parker in State v. Hewett, 270 N.C. 348, 154 S.E.2d 476 (1967).

Under the North Carolina statute, then, as interpreted by the Attorney General and by the Supreme Court and by the trial judge, it is apparent that although (a) the trial judge exercises discretion whether to revoke or not to revoke probation, nevertheless (b) once he has exercised that discretion the imposition of the full original sentence is automatic.

Petitioner was thus automatically sentenced to seven years in prison for four types of non-criminal conduct (job changing, address changing, non-support and public drunkenness) which are all characteristic of chronic drunks.

There would appear to be no rational relationship between the behavior described in the probation revocation and a seven-year prison sentence even with work release authorized. See, for example, Hart v. Coiner, 483 F.2d 136 (4th Cir. 1973).

It is the opinion of this court that the North Carolina probation statute as interpreted by the North Carolina court and as applied in this case deprived the probationer of due process of law by subjecting him to additional punishment which has no rational relationship to the seriousness of the offenses which brought about revocation of the probation.

Probation is punishment. A reading of the conditions of probation with which petitioner complied for four and one-half years is enough to settle that question. Anybody who complies with all of those conditions must be an exceptional individual. (For example, a probationer must avoid persons or places of disreputable or harmful character; he must "save his earnings above his reasonably necessary expenses."! He must permit the probation officer to visit at his home or elsewhere; he must violate no penal law and be of "general good behavior.")

The conditions of probation are quite similar to conditions normally exacted when a prisoner is out on parole from an active sentence. As to conditions of parole the Supreme Court has gone to considerable length in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1962), in describing the extent to which supervision by a court officer restrains a man's liberty and constitutes punishment even though he may be walking around outside prison doors. The Supreme Court said:

"The Virginia statute provides that a paroled prisoner shall be released 'into the custody of the Parole Board,' and the parole order itself places petitioner 'under the custody and control of the Virginia Parole Board.' And in fact, as well as in theory, the custo-

dy and control of the Parole Board involves significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally. Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest, and temperate live. Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison to serve out the very sentence he claims was imposed upon him in violation of the United States Constitution. He can be rearrested at any time the Board or parole officer believes he has violated a term or condition of his parole, and he might be thrown back in jail to finish serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime. It is not relevant that conditions and restrictions such as these may be desirable and important parts of the rehabilitative process; what matters is that they significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do. Such restraints are enough to invoke the help of the Great Writ." (371 U.S. 236, 241–43, 83 S. Ct. 377.)

Similar views were expressed by the Fourth Circuit Court of Appeals in Alvarado v. McLaughlin, 486 F.2d 541, 544 (4th Cir. 1973), as follows:

" . . . Parole is not 'a suspension of sentence' Jenkins v. Madigan (7th Cir. 1954) 211 F.2d 904, 906, cert. denied 348 U.S. 842, 75 S.Ct. 63, 99 L.Ed. 664; it does not remove or make invalid the sentence imposed, Marrero v. Warden, *supra* [483 F.2d 656 (3d Cir.)]; it is still 'a form of custody', Padilla v. Lynch (9th Cir. 1968) 398 F.2d 481, 482, and 'is in legal effect imprisonment', Anderson v. Corall (1923) 263 U.S. 193, 196, 44 S. Ct. 43, 68 L.Ed. 247; in summary, it 'is not a release of the prisoner from all disciplinary restraint but is rather merely "an extension of the prison walls"; and the prisoner while on parole remains "in the legal custody and under the control of" the Parole Board,' United States v. Nicholson (4th Cir. 1935) 78 F.2d 468, 469–470, cert. denied 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405."

It may be true that the procedure by which probation is revoked need not follow strict due process, Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L. Ed.2d 656 (1973), because the original trial and pre-sentence hearing have provided due process covering the original sentence. If the sentence upon revocation of probation were confined to a term not exceeding the time remaining under the original seven-year sentence he would appear to have no due process complaint.

However, since Hall's four and one-half years of probation plus his seven years of active time have converted his original sentence from a seven-year sentence to an eleven-and-one-half-year sentence, there must be some due process hearing to determine whether the punishment imposed after revocation of probation is rationally related to the seriousness of the conduct giving rise to the revocation. Sentencing is a judical function which includes the basic decision whether to imprison and the second decision as to how long and on what terms to imprison. Both decisions are judicial; the Constitution does not equate the judgment of a sentencing court with the judgment or pleasure of a supervising probation officer.

**1302**

■ There is another problem with the North Carolina procedure. It subjects the probationer to double jeopardy through a proceeding or process not of his choosing and not the result of an option which he pursued.

Several recent cases, some of them rather surprisingly, have held that where the defendant himself opts or elects a re-trial, North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), or a trial *de novo*, Colten v. Kentucky, 407 U.S. 104, 92 S. Ct. 1953, 32 L.Ed.2d 584 (1972), or a revision of his sentence, Robinson v. Warden, 455 F.2d 1172 (4th Cir. 1972), he must take the good with the bad, and may constitutionally be given a greater as well as a lesser sentence by the court which gave him the reconsideration he demanded. On the other hand, where the reconsideration was not part of an option in the criminal process which was pursued by the defendant himself, increases in punishment are unconstitutional, United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); Ex Parte Lange, 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1874).

■ It is meaningless to say that although the double jeopardy clause prevents two *prosecutions* for the same offense, it does not prevent two *punishments*. A second punishment is any loss of liberty that goes beyond the judgment of the court in the initial prosecution. If probation revocation results in loss of liberty extending beyond the total period specified in the original judgment, it results in double jeopardy unless the extension of the period is caused by the prisoner himself, as in the case of escape. Time spent on probation is time spent in custody as far as the double jeopardy prohibition is concerned. If Hall serves out his allotted time he will in effect have spent eleven and one-half years in state custody and control for offenses of forgery which the original sentencing judge obviously thought were not serious enough to justify immediate imprisonment.

Cases which have reached the opposite conclusion appear to have proceeded upon the premise contrary to *Cunningham* and *Alvarado* that time spent on probation is "free" time rather than time in custody or undergoing correction. It may not be inappropriate to refer to the 1970 tentative draft of "Standards Relating to Probation" of the Advisory Committee on Sentencing of the American Bar Association Project on Standards for Criminal Justice, which said:

"Probation is properly viewed as a sentence just like any other sentence. It is an attempt by society to impose a sanction which will accomplish its goal just as any other sentence is designed to do."

## ORDER

As applied in this case and as obviously interpreted by the Attorney General and the judge, the North Carolina probation statute, G.S. § 15–200, is unconstitutional in its requirement that upon violation of conditions of probation a probationer be incarcerated for the full period of the original suspended sentence. Hall's present confinement is unconstitutional (a) because no fresh consideration has been given by any judicial authority to the question whether his deadbeat character and behavior which resulted in the imposition of his seven-year prison sentence are offenses of such seriousness that they require him to spend seven years behind bars, and (b) because it is double punishment for one offense.

Because Hall has already spent nearly a year and a half in prison since his probation was revoked, and because it may take awhile for this case to reach its conclusion, he ought not to stay in prison awaiting the settlement of the constitutional issues.

The writ of habeas corpus is granted. Defendants are directed to release the petitioner without bond pending final determination of this action.

See Appendix on next page.

## APPENDIX

§ *15.200. Termination of probation, arrest, subsequent disposition.* The period of probation or suspension of sentence shall not exceed a period of five years and shall be determined by the judge of the court and may be examined or extended, terminated or suspended by the court at any time, within the above limit. Upon the satisfactory fulfillment of the conditions of probation or suspension of sentence the court shall by order duly entered discharge the defendant. At any time during the period of probation or suspension of sentence, the court may issue a warrant and cause the defendant to be arrested for violating any of the conditions of probation or suspension of sentence. Any police officer, or other officer with power of arrest, upon the request of the probation officer, may arrest a probationer without a warrant. In case of an arrest without a warrant the arresting officer shall have a written statement signed by said probation officer setting forth that the probationer has, in his judgment, violated the conditions of probation; and said statement shall be sufficient warrant for the detention of said probationer in the county jail, or other appropriate place of detention, until said probationer shall be brought before the judge of the court. Such probation officer shall forthwith report such arrest and detention to the judge of the court, or in superior court cases to the judge holding the courts of the district, or the resident judge, or any judge commissioned at the time to hold court in said district, and submit in writing a report showing in what manner the probationer has violated probation. Upon such arrest, with or without warrant, the court shall cause the defendant to be brought before it in or out of term and may revoke the probation or suspension of sentence, and shall proceed to deal with the case as if there had been no probation or suspension of sentence. If at any time during the period of probation or suspension of sentence a warrant is issued and the defendant is arrested for a violation of any of the conditions of probation or suspension of sentence, or in the event any person is arrested at the instance of a probation officer, the defendant shall be allowed to give bond pending a hearing before the judge of the court, and the court issuing the order of arrest shall in said order, fix the amount of the appearance bond, or if appearance bond should not be fixed by the court, the officer having the defendant in charge shall take sufficient justified bail for the defendant's appearance at said hearing and the bond shall be returnable at such time and place as shall be designated by the probation officer.

Where a probationer resides in, or violates the terms of his probation in, a county and judicial district other than that in which said probationer was placed on probation, concurrent jurisdiction is hereby vested in the resident judge of superior court of the district in which said probationer resides or in which he violates the terms of his probation, or the judge of superior court holding the courts of such district, or a judge of the superior court commissioned to hold court in such district, to issue warrants for the arrest of such probationer, to discharge such probationer from probation, to continue, extend, suspend or terminate the period of probation of such probationer, and to revoke probation and enter judgment or put into effect suspended sentences of probation judgment, for breach of the conditions of probation, as

fully as same might be done by the courts of the county and district in which such probationer was placed on probation, when such probationer was originally placed on probation by a superior court judge; provided, that the court may, in its discretion, for good cause shown, and shall on request of the probationer return such probationer for hearing and disposition to the county or judicial district in which such probationer was originally placed on probation; provided, that in cases where the probation is revoked in a county other than the county of original conviction, the clerk in such county revoking probation may record the order of revocation in the judge's minute docket, which shall constitute sufficient permanent record of the proceedings in that court, and shall send one copy of the order revoking probation to the North Carolina Prison Department to serve as a temporary commitment, and shall send the original order revoking probation and all other papers pertaining thereto, to the county of original conviction to be filed with the original records; the clerk of the county of original conviction shall then issue a formal commitment to the North Carolina Prison Department. (1937, c. 132, s. 4; 1939, c. 373; 1953, c. 43; 1955, c. 120; 1959, c. 424; 1961, c. 1185.)

File #70CR6031/6032

Film #_____

In the General Court of Justice
Superior Court Division

STATE OF NORTH CAROLINA
County of Gaston

| The State of North Carolina | "AMENDED" |
|---|---|
| vs. | JUDGMENT AND COMMITMENT |
| Billy Ray Hall | UPON |
| | REVOCATION OF SUSPENSION |
| Name, Age, Sex and Race | OF SENTENCE |
| of Defendant | |

H0288–093–10744–08

The defendant appeared before the Court this day after due notice upon an inquiry into an alleged violation of condition of suspension of the prison sentence imposed in that certain JUDGMENT SUSPENDING SENTENCE appearing of record in this case, issued on the 3rd day of September, 1968.

From evidence presented, the Court finds as fact that within the specified period of suspension, the defendant did wilfully and without lawful excuse violate the terms and conditions of the probation judgment as set out in Order Revoking Probation.

It is ADJUDGED that defendant has breached a valid condition upon which the execution of said sentence was suspended, and it is ORDERED that such suspension be revoked and that said defendant be imprisoned:

For the term of seven (7) years

In the Common Jail of Gaston County to be assigned to work under the Supervision of the Department of Corrections as provided by law. Upon reaching honor grade, the Court recommends work release with

a portion of his earnings to be sent to his wife for the support of her and their children.

Defendant will be given credit for 28 days served in the Gaston County Jail

It is further ORDERED that the Clerk deliver two certified copies of this JUDGMENT AND COMMITMENT and two copies of the JUDGMENT SUSPENDING SENTENCE mentioned above to the Sheriff or other qualified officer, and that said officer cause the defendant to be delivered, with such copies as commitment authority, to the appropriate prison official.

This 3rd day of April, 1973.

Edna C. Hall

Pearless Mill Village

Lowell, North Carolina

_____
Presiding Judge

Attorney for Defendant:

Attorney for the State:

Date certified copies of judgment delivered to Sheriff for commitment: