Clayton YOUNG, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

May 10, 1976.

Certiorari Denied by Supreme Court July 26, 1976.

C. Douglas Thoresen, Nashville, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Thomas H. Shriver, Dist. Atty. Gen., Edward M. Yarbrough, Asst. Dist. Atty. Gen., Nashville, for defendant-in-error.

OPINION

DUNCAN, Judge.

The petitioner, Clayton Young, has appealed from a judgment of the Davidson County Criminal Court dismissing his petition for a writ of Habeas Corpus.

On January 8, 1968, the petitioner was convicted in the White County Criminal Court for assault with intent to commit murder in the first degree, receiving a penitentiary sentence of not less than 3 years nor more than 10 years but was placed on probation. His probation was revoked on May 11, 1971, and he was committed to the penitentiary to serve his sentence. On May 11, 1972, he was granted a parole by the Tennessee Board of Pardons and Paroles.

On September 4, 1973, the petitioner was arrested by a White County Officer for being drunk and was placed in jail. A violation report was submitted, charging him with violating the terms of his parole. On September 17, 1973, Young executed a form, waiving his preliminary probable cause hearing. On January 18, 1974, the Tennessee Board of Pardons and Paroles held a final hearing, with the result that the petitioner's parole was revoked.

The present proceeding was not commenced until May 8, 1975, at which time the instant petition was filed, wherein the petitioner complains about the procedures used in revoking his parole. The petitioner offered no explanation as to the reason for the almost 16 month delay between the revocation of his parole and the commencement of the present action.

The record does show that in the interim, the petitioner filed a petition for a writ of habeas corpus in the United States District Court. This petition was dismissed by that Court on October 4, 1974, and will be referred to again later in this opinion. *Clayton Young v. James H. Rose, Warden,* No. 74–312 NA–CV (M.D.Tenn.1974). Also, we find from the records that on January 28, 1975, approximately one year after his parole had been revoked, the petitioner was again recommended for parole, was granted a furlough, but returned from furlough in a drunken condition, and his new recommendation for parole was rescinded by the Board on March 27, 1975.

Thus, it would appear that it was only after his unsuccessful efforts in Federal Court, and the rescinding of his new recommendation for parole, that he decided to make complaint in the state courts regarding the procedures used in 1974 to revoke his parole.

In this appeal, the petitioner makes several assignments of error, generally contending that the trial court erred in not finding that he was denied due process of law in the procedures used in the revocation of his parole.

He first argues that he was coerced into signing a waiver of his right to a probable cause hearing.

*Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), provides that a parolee, charged with violating the terms of his parole, is entitled to a hearing "in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." T.C.A. § 40–3618(b) provides, in substance, for the same thing, as follows:

"Upon the arrest of a parolee pursuant to the above amended sections, unless waived in writing, a preliminary hearing shall be conducted to determine whether probable cause exists to believe that the parolee has violated the conditions of his parole in an important respect."

■ In this cause, the petitioner executed a waiver of the probable cause inquiry, which waiver was filed in evidence in the present hearing. The petitioner insists that he was coerced into signing this waiver, but offers no proof of any substance as to the manner of such alleged coercion. At one point in his testimony he testified: "I signed it in order to get back before this parole board here . . ." The trial judge found that the petitioner had not carried his burden of proof to show that he was coerced into signing the waiver. The evidence does not preponderate against this finding and we are bound by it. *Turner v. State,* 1 Tenn.Cr.App. 582, 447 S.W.2d 876 (1969).

The petitioner's first assignment of error is overruled.

■ Next, the petitioner complains that he was denied a prompt parole revocation hearing. We find this contention to be without merit.

The petitioner was brought into custody in September, 1973, for his alleged violations, and his final hearing was held approximately four months later, on January 18, 1974. The reason for this time lapse is not disclosed in the record. *Morrissey v. Brewer,* supra, says that the "revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." In the *Morrissey* case, a time lapse of two months was held not to be unreasonable. The petitioner has failed to show that any prejudice has resulted to him by reason of the time lapse involved.

In the petitioner's third, fourth and fifth assignments of error, he contends that he was deprived of his right to confront and cross-examine witnesses at the parole revocation hearing; that public drunkenness convictions used against him at the hearing were convictions obtained without the benefit of counsel; and that he was denied a fair hearing before the Board, denied counsel at the hearing, and was deprived of an opportunity to be heard.

In *Morrissey v. Brewer,* supra, the Court said:

"There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."

In enumerating the minimum requirements of due process in a parole revocation hearing, the *Morrissey* court stated that they included:

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."

The *Morrissey* court then went on to say: "We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."

At the revocation hearing, some type of record was introduced to show that the petitioner had been convicted of public drunkenness on three occasions. The petitioner maintains that he did not have counsel at those trials and that it was improper for the Parole Board to consider these convictions. He admitted in his testimony before the Board that one of the convictions was accurate, but denied that he had been convicted on the other two occasions.

■ A transcript of the proceedings had at the parole revocation hearing was filed in evidence in the instant case. That transcript shows that Rule 4 of the conditions of the petitioner's parole was that he would "not use intoxicants of any kind to excess." The petitioner testified at that hearing and admitted that he had been using intoxicants in violation of Rule 4 while on parole, stating that he had a drinking problem and drank to relieve the "tension."

From the petitioner's testimony at the revocation hearing, as well as at this evidentiary hearing, the record leaves no doubt that he was in violation of one of the rules of his parole by using intoxicants to an excess while on parole; thus, it is immaterial whether he was validly convicted in a court for being "drunk."

■ Since the petitioner admitted his parole violation at his revocation hearing, then he is in no position to complain. In the *Morrissey* case, the Court recognized a difference in the necessary procedures to be followed where the parolee admitted his violations, by saying:

"If it is determined that petitioners admitted parole violations to the Parole Board, as respondents contend, and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter."

Thus, the petitioner's right to confront and cross-examine witnesses would have added nothing to the revocation proceedings. Further, the transcript of his revocation hearing refutes his allegation that he was denied an opportunity to be heard. This transcript shows that the Parole Board extended to him a fair, dignified, courteous, and sympathetic hearing. He was given full opportunity to speak and to present his explanations. His mother was allowed to speak, and even her statements showed that the petitioner had been using intoxicants to an excess. At one point, his mother stated

"He's a good person when he's not drunk," and "I'd love for him to stay home if he could stay sober."

■ As to the petitioner's contention that he did not have counsel at his revocation hearing, we note that in the *Morrissey* case, the Court said:

"We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."

In *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court held that a state is not under a constitutional duty to provide counsel for indigents in all probation or parole revocation cases. The Court said that "the decision as to the need for counsel must be made on a case by case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system."

Under the facts and circumstances in the present case, we do not find that the Parole Board abused its sound discretion in denying counsel to the petitioner.

Furthermore, in his prior petition in Federal Court, mentioned at the outset of this opinion, the petitioner raised the issue that he was denied counsel at his parole revocation hearing. *Clayton Young v. James H. Rose, Warden,* supra. The district judge found no merit to this complaint and said in his opinion: "In the determination of this court, the due process requirements outlined in *Gagnon v. Scarpelli,* supra, were satisfied by the Board of Pardons and Paroles in this case."

■ So, in contending that he was denied counsel at his parole revocation hearing, the petitioner is again attempting to relitigate this question which was previously determined adverse to him by a court of competent jurisdiction. This he may not do. T.C.A. §§ 40–3811 and 40–3812; *Myers v. State,* 3 Tenn.Cr.App. 414, 462 S.W.2d 265 (1970).

We overrule these assignments of error.

■ Likewise, we find no merit to the petitioner's complaint that he is having to serve an extended penitentiary sentence which has no rational relationship to the offenses for which his parole was revoked. If this contention had merit, then many of the rules that a parolee is required to follow would have no vitality and would serve no purpose in attempting to restore one to good citizenship. Certainly, a condition that one not excessively imbibe in intoxicants is a reasonable restriction. In some cases, like the one here, such a condition is an absolute necessity. It is obvious that the State has repeatedly worked with the petitioner in an effort to rehabilitate him. Apparently, his drinking led him to commit his major offense, and the State's efforts to rehabilitate him, first on probation, then on parole, has been negated by his repeated acts of drinking. Under this record, the Parole Board had no alternative but to revoke his parole. The petitioner, upon revocation of his parole, suffers imprisonment under a sentence, not for the matters that may have caused the revocation of his parole, but for the crime of assault with intent to commit first degree murder. The validity of his sentence thus is to be measured by the crime for which it was imposed and not by the acts of misbehavior that induced the Parole Board to revoke his parole.

■ His last complaint to the effect that he should have credit on his sentence for the time he spent on probation is not tenable. By Tennessee law, where an individual's suspended sentence is revoked, his sentence commences to run from the date of revocation.

T.C.A. § 40–2906 provides in part, as follows:

"The trial judge shall possess the power, at any time within the maximum time which was directed and ordered by the court for such suspension, after proceeding as mentioned in § 40–2907, to revoke and annul such suspension, and in such cases *the original judgment so rendered by the trial judge shall be in full force*

and effect from the date of the revocation of such suspension, and shall be executed accordingly; . . ." (emphasis added).

Under T.C.A. § 40–2907, covering the procedure to be followed in revoking a suspended sentence, it is stated:

". . . If the trial judge should find that the defendant has violated the conditions of his probation and suspension, the trial judge shall have the right by order duly entered upon the minutes of his court, to revoke the probation and suspension of sentence *and cause the defendant to commence the execution of the judgment as originally entered,* . ." (emphasis added).

Obviously, a person does not serve a prison sentence while on probation or parole any more than he does while free on bail. In both instances, there are certain restrictions generally on the person's movements, but the person's condition, as the Court said in *Morrissey v. Brewer,* supra, is "very different from that of confinement in a prison."

We think these statutory provisions set forth above answer this last question posed, and we hold that a prisoner is not entitled to credit on his sentence for time spent on probation.

For the last two propositions discussed in this opinion, the petitioner cites in his brief the case of *Hall v. Bostic,* 391 F.Supp. 1297 (W.D.N.C.1974). We note this case was reversed on December 16, 1975. *Billy Ray Hall v. O. M. Bostic,* 529 F.2d 990 (4th Cir. 1975). Thus, it can serve as no authority for the propositions advanced.

We find no merit in any of the complaints raised and the petitioner's assignments of error are all overruled. We affirm the judgment of the trial court.

O'BRIEN and GALBREATH, JJ., concur.