IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 6, 2006 Session

**STATE OF TENNESSEE v. NICHOLAS GOFF**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-05406     Carolyn Wade Blackett, Judge**

---

**No. W2005-02233-CCA-R3-CD  - Filed September 20, 2006**

---

The defendant, Nicholas Goff, entered a plea of guilty to one count of driving under the influence, first offense.  Pursuant to a plea agreement with the state, the trial court imposed a sentence of eleven months and twenty-nine days with two days in jail followed by probation.  Five months later, a violation warrant was issued and the trial court revoked his probation and ordered the original sentence into execution.  In this appeal, the defendant asserts (1) that he was not afforded due process of law; (2) that he was denied the effective assistance of counsel; (3) that the trial court erred by revoking his probation on the basis of a "mere arrest;" and (4) that the trial court erred by appointing an assistant public defender as his lawyer.  The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Randall B. Tolley, Memphis Tennessee (at revocation hearing and on appeal), and Sanjeev Memula, Assistant Public Defender (at hearing), for the appellant, Nicholas Goff.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tiffani Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 3, 2005, the defendant, originally charged with second offense driving under the influence, reckless driving, violation of the implied consent law, and driving on a revoked license, entered a plea of guilty to one count of first offense driving under the influence.  Pursuant to a plea agreement, the defendant received a sentence of eleven months and twenty-nine days with two days in jail followed by probation.  Just over five months later, a violation warrant was issued for the defendant's failure to "obey all laws" of the United States and the State of Tennessee.  The warrant specifically stated that "[o]n June 17, 2005, the defendant was arrested and charged with

Driving While License Suspended/ Revoked/ Cancelled under booking number 05629287" and ordered to appear in General Sessions Court.

On August 10, 2005, defense counsel asked that the defendant be released on bail. The state opposed the motion. The trial court scheduled the revocation hearing two days later and agreed to conduct a hearing on the issue of bail at that time. Although defense counsel expressed reservations about conducting the hearing so soon, he agreed to the date. Two days later, when the state announced its intention to proceed with the revocation hearing, defense counsel objected, arguing that "[t]o proceed on such would obviously be unconstitutional." He contended that he was not prepared for the defense and that the defendant was entitled to an adjudication on his motion for bail prior to a revocation hearing. The trial court agreed to address bail first but insisted on the revocation proceeding. Defense counsel consented, but commented, "That's fine . . . but . . . know that my objection will be constitutional. I will be ineffective." After a brief hearing which consisted only of argument, the trial court denied bail, at which point, defense counsel remarked, "Your Honor, I would just state for the record I declare myself ineffective as counsel to represent him in the bond hearing."

During the hearing, Annie Ezell, the defendant's probation officer, testified that the defendant, who was placed on probation in February of 2005, was arrested for driving on a revoked license some four and one-half months later. When Ms. Ezell conceded that she had not spoken with defense counsel prior to the hearing, the trial court offered a recess to permit an interview. Defense counsel declined, explaining, "I just declare myself ineffective." The trial judge responded, "I am willing to give you the whole lunch period to speak to her. There's only so much that you're going to be able to ask her." Defense counsel again declined but asked for a continuance of two weeks. The trial court denied the continuance request but agreed to recess so that defense counsel could interview both the probation officer and the police officer who had issued the citation. Defense counsel also declined the last offer, commenting that he would be "just as ineffective" after a recess. The trial court proceeded with the hearing.

Officer John Baker testified that on June 17, 2005, he observed a car owned by Kerry Willis with expired drive-out tags. He initiated a traffic stop, discovered that the defendant was the driver, and learned that his license had been revoked. The officer issued a citation but permitted Ms. Hillis, who had been in the passenger seat, to drive the car from the scene.

At the conclusion of Officer Baker's testimony, the trial court again offered to recess to allow defense counsel to interview the state witnesses, offering to adjourn the hearing until the following Monday. After conferring with the defendant, defense counsel stated his intention to "[s]ubmit the case to the Court . . . today." When the state then asked that the defendant be questioned regarding the decision, the defendant testified that he felt that he had no choice but to follow the advice of his attorney. At that point, the state asked that defense counsel be relieved from the case and suggested that the public defender be appointed in his place. The trial court agreed, appointed the public defender, and reset the hearing for the following Monday.

The record establishes that the hearing was not actually concluded until September 7, 2005, nearly one month after it began. On that date, the assistant public defender who had been appointed to represent the defendant announced that he had agreed to stipulate that the defendant was driving on a revoked license in violation of his probation. The assistant public defender re-called Ms. Ezell, who confirmed that the defendant was current on his probation fees, that he had reported as required by the probationary terms, and that he had nearly completed the other requirements of his release.

William Goff, the defendant's grandfather, was also called as a defense witness. He testified that the defendant assisted in his medical care, did his laundry, and prepared all of his meals. Goff identified the defendant as his only caretaker. While acknowledging that the defendant had struggled with alcohol addiction in the past, Goff asserted that "he's got his drinking problem over with."

Ms. Hillis, the owner of the vehicle that had been stopped by Officer Baker, described the defendant as "a good friend" and recalled that on the day of his arrest, she had asked the defendant to drive her and her son to lunch. She stated that she did not "realize the severity" of her request until the car was stopped by the police officer. Ms. Hillis explained that she had asked the defendant to drive because she was tired. She acknowledged, however, that she was aware that the defendant had been previously convicted of DUI, that he did not have a valid driver's license, and that he was on probation at the time.

The defendant testified that he "wasn't thinking" when he agreed to drive Ms. Hillis to lunch. He expressed regret for the decision and promised that he would not drive again. The defendant related that he lived part-time with his grandfather, for whom he provided daily care, and part-time with Ms. Hillis. He stated that he had stopped drinking alcohol and had successfully completed a rehabilitation program ordered by a General Sessions judge. He promised that he "would accept any terms the Court offered" if given another opportunity at probation. The defendant insisted that he "would never[,] ever violate [his] probation in any way again" because both his grandfather and Ms. Hillis needed him. He asked for mercy. The defendant conceded, however, that he had been given more than one chance at probation.

At the conclusion of the hearing, the trial court revoked probation, placing emphasis on the fact that he had been given more than one opportunity at probation. The court observed that "when the Court over-extends itself, places you on probation, gives you an ordinary amount of time to get yourself together[,] and if you refuse to do that[,] there is a price to pay."

I

The defendant first asserts that he was denied the due process of law because the trial court conducted the revocation hearing only two days after he was taken into custody; because the trial court denied him the opportunity to adequately prepare a defense; and because the trial court did not make appropriate factual findings when it revoked his probation. The state submits that the defendant was afforded the due process of law.

-3-

The United States Supreme Court has observed that "probationers have an obvious interest in retaining their conditional liberty, and the state also has an interest in assuring that revocation proceedings are based on accurate findings of fact and, where appropriate, the informed exercise of discretion." Black v. Romano, 471 U.S. 606, 611 (1985). Our own supreme court has recognized that those on probation have a liberty interest which must be protected by minimum standards of due process of law. State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993). In Gagnon v. Scarpelli, 411 U.S. 778 (1973), the Supreme Court adopted several factors which the Court considered the "minimum requirements of due process" in a probation revocation proceeding:

"(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole."

Id. at 786 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).

In this case, the defendant was provided with written notice of the alleged violation. He was fully aware of the proof the state intended to offer and was afforded the opportunity to be heard in person. Further, while the trial court declined to grant defense counsel's request for a continuance, the defendant was given the opportunity to present witnesses and the opportunity to interview and cross-examine the witnesses for the state. The hearing occurred before a "'neutral and detached' hearing body." At the conclusion of the hearing, the trial court announced its factual findings and stated on the record the reason for the revocation. The trial court followed the procedure for revocation established in Tennessee Code Annotated section 40-35-311, which provides, in pertinent part, as follows:

Whenever any person is arrested for the violation of probation and suspension of sentence, the trial judge granting such probation and suspension of sentence, the trial judge's successor, or any judge of equal jurisdiction who is requested by such granting trial judge to do so shall, at the earliest practicable time, inquire into the charges and determine whether or not a violation has occurred, and at such inquiry, the defendant must be present and is entitled to be represented by counsel and has the right to introduce testimony in the defendant's behalf.

Tenn. Code Ann. § 40-35-311(b) (2003) (emphasis added). Under these circumstances, it is our view that the defendant was afforded the due process of law required at a revocation hearing. See Gagnon, 411 U.S. at 786; Wade, 863 S.W.2d at 408.

II.

-4-

The defendant also asserts that he was denied the effective assistance of counsel at the revocation hearing. He specifically contends that his defense counsel was ineffective by failing to adequately prepare and that the assistant public defender was ineffective by introducing testimony that was harmful to his interests, by failing to present case law provided by his initial defense attorney, and by stipulating that he had violated his probation by driving the Hillis vehicle. The state argues otherwise.

While the right to counsel is guaranteed in all criminal cases, the right to counsel at a revocation hearing is not constitutionally guaranteed. Gagnon, 411 U.S. at 789-90; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Young v. State, 539 S.W.2d 850, 854 (Tenn. Crim. App. 1976). In Richard Lee Kiser v. State, Nos. 01C01-9503-CC-00071, 01C01-9503-CC-00082 (Tenn. Crim. App., at Nashville, Dec. 6, 1995), this court explained how an ineffective assistance of counsel claim relates to a revocation hearing:

> Although a defendant has a number of constitutional rights at a hearing for revocation of probation, which frequently cannot be guaranteed to him without counsel being present representing the interests of that defendant, the right to counsel at a revocation of probation hearing is not guaranteed by either the Constitution of the United States or the Constitution of the State of Tennessee. Thus, the effectiveness of counsel at a revocation hearing is not a constitutional issue, except in those cases where the performance of counsel is so defective that another right which is constitutionally guaranteed at a revocation hearing is violated.

Id., slip op. at 5 (emphasis added); see also State v. Larry Ammons, No. W2001-00834-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., at Jackson, Mar. 18, 2002), perm. app. denied (Tenn. Sept. 23, 2002). "The effectiveness of counsel at a revocation hearing does not raise a constitutional issues unless counsel's performance was so defective that one of the defendant's due process rights was violated." State v. Jerry N. Eldridge, No. M2004-01080-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., at Nashville, Feb. 16, 2006) (citing Richard Lee Kiser, slip op. at 5; State v. David W. Sonnemaker, No. E2003-01402-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., at Knoxville, March 12, 2004), perm. app. denied (Tenn. Oct. 11, 2004); Larry Ammons, slip op. at 6.)

The record establishes that despite defense counsel's admission that he had not prepared for the revocation hearing, the defendant eventually presented witnesses on his behalf and was provided the opportunity to confront the adverse witnesses. Furthermore, it is our view that none of the allegations against the assistant public defender, even if true, operated to deprive the defendant of those constitutional rights guaranteed at a revocation hearing. The assistant public defender presented witnesses on the defendant's behalf, cross-examined the witnesses for the state, and argued to the trial court that the defendant should be given another opportunity at probation. It was apparently his strategy to admit the violation and ask for mercy from the court. That he was unsuccessful does not entitle the defendant to relief. As indicated, it is our view that the defendant was afforded the due process required at a revocation hearing. Because he was not deprived of due

process, the defendant has failed to establish that he was denied the effective assistance of counsel. See Jerry N. Eldridge, slip op. at 5-6 (holding that defendant was not entitled to relief based on ineffective assistance of counsel where he failed to establish that his due process rights were violated).

### III.

The defendant next contends that the trial court erred by revoking his probation on the basis of a "mere arrest." The state submits that the trial court did not abuse its discretion by revoking the defendant's probation.

Our general law provides that a trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e) (2003); Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). On appeal, a revocation will be upheld absent an abuse of discretion. In order to establish that the trial court has abused its discretion, the defendant must show that there is no substantial evidence to support the determination that he violated his probation. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). Relief can be granted only when "'the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

When the violation alleged is the commission of a new offense, the state must present sufficient facts at the revocation hearing to enable the trial court to "make a conscientious and intelligent judgment as to whether the conduct in question violated the law." Harkins, 811 S.W.2d at 83 n.3. While a pending charge may be a basis for the revocation of probation, "a trial court may not rely upon the mere fact of an arrest or an indictment to revoke a defendant's probation." State v. Clyde T. Smith, No. M2002-00553-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., at Nashville, Jan. 21, 2003).

Here, the record establishes that the defendant conceded that he violated the terms of his probation when he drove Ms. Hillis to lunch. He knew that his driver's license had been revoked and was aware that it was a violation of the law for him to drive. Officer Baker and Ms. Hillis testified that the defendant was driving at the time of his arrest. Ms. Hillis also knew that the defendant's driver's license had been revoked. Probation was revoked based upon the fact that the defendant drove after his license had been revoked. Under these circumstances, it is our view that the trial court did not abuse its discretion by revoking probation and ordering service of the original sentence.

### IV.

Finally, the defendant contends that the trial court's "on the spot" appointment of the assistant public defender violated his right to counsel of his own choosing. The state submits that the defendant has waived the consideration of this issue by failing to object in the trial court.

The record establishes that defense counsel, in advance of the completion of the revocation hearing, declared himself to be ineffective on behalf of his client. When the state asked that counsel be substituted, neither the defendant nor his counsel objected. In fact, defense counsel expressed concurrence with the appointment based upon "the circumstances of this hearing." The defendant, who was questioned thoroughly by the trial court regarding his decision to "submit the case," did not voice any concerns with regard to the appointment. In consequence, the waiver doctrine would apply. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). More importantly, the defendant has failed to establish that the trial court abused its discretion by the appointment.

As indicated, the right to counsel at a revocation hearing is not constitutionally guaranteed. Gagnon, 411 U.S. at 789-90; Baxter, 523 S.W.2d at 936; Young, 539 S.W.2d at 854. Further, the right to be represented by counsel of one's choice "'must be balanced against the requirements of the fair and proper administration of justice.'" State v. Huskey, 82 S.W.3d 297, 305 (Tenn. Crim. App. 2002) (quoting United States v. Micke, 859 F.2d 473, 480 (7th Cir. 1988)). Accordingly, the trial court's action in matters regarding the appointment and relief of counsel will not be set aside on appeal absent a showing that the trial court abused its discretion. See id.; State v. Rubio, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987). A reviewing court must be mindful that the Sixth Amendment right to counsel of one's choice should inform, rather than take the place of, judicial discretion. United States v. Dinitz, 538 F.2d 1214, 1219 (5th Cir. 1976). Consideration of this issue requires a balancing of the defendant's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. See Wilson v. Mintzes, 761 F.2d 275, 280-81 (6th Cir. 1985); see also United States v. Burton, 584 F.2d 485, 489 (D.C. Cir. 1978) ("The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force.").

In this case, defense counsel repeatedly described his representation as ineffective. He declined numerous offers to interview the state witnesses prior to the conclusion of the hearing. He instructed the defendant to "submit the case" even though the defendant described himself as "in the dark" with "no idea what's going on." Moreover, the record indicates that neither the defendant nor his defense counsel objected to the appointment of the assistant public defender. In our view, the record establishes that the defendant was afforded the due process required at a revocation hearing. The trial court did not abuse its discretion.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-7-