IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs June 20, 2018

**STATE OF TENNESSEE v. JAMES P. JONES**

**Appeal from the Criminal Court for Sumner County**
**No. 322-2013          Dee David Gay, Judge**

_____

**No. M2017-01790-CCA-R3-CD**

_____

James P. Jones, Defendant, was convicted of several counts of theft and aggravated burglary. The trial court sentenced Defendant to a twelve-year probationary sentence. A violation of probation warrant was later issued against Defendant. After a hearing, the trial court revoked Defendant's probation. Defendant now timely appeals the trial court's decision and argues that he was denied the right to counsel during the revocation hearing. Because we conclude that Defendant did not effectively waive or forfeit his right to counsel, we reverse the judgment of the trial court and remand this case for appointment of counsel and a new probation revocation hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed
and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

James P. Jones, Memphis, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Ray Whitley, District Attorney General; and Tara Wyllie and C. Ronald Blanton, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

On September 12, 2013, Defendant pled guilty to one count of theft of property under the value of $500, five counts of aggravated burglary, and four counts of theft of property between the value of $1,000 and $10,000.[1] Defendant received a total effective sentence of twelve years, which the trial court suspended to supervised probation. On September 3, 2014, the trial court filed a violation of probation warrant against Defendant based on a citation for simple possession of marijuana and possession of drug paraphernalia. After a probation hearing, the trial court revoked Defendant's probation and placed his sentence into effect. On December 3, 2014, Defendant filed a motion to reconsider the sentence. On June 22, 2015, the trial court ordered Defendant to serve his sentence in incarceration until June 30, 2015; thereafter, Defendant's sentence was suspended to supervised probation.[2]

In 2017, Defendant pled guilty to domestic assault and received a sentence of eleven months and twenty-nine days that was suspended to probation. The trial court issued a second violation of probation warrant that alleged that Defendant violated rules one and fourteen of the conditions of his release based on his arrest and charge of domestic assault.

At the probation violation hearing, the following exchange occurred:

> [APPOINTED COUNSEL]: Judge, on his way up is my client, [Defendant]. I regret that I'm going to have to make an oral motion for permission to withdraw in light of [Defendant's] conduct, making it unreasonably difficult for me to represent him.
>
> THE [TRIAL] COURT: [Defendant], you know, you are entitled to appointed counsel under our constitution, but you're not entitled to the appointed counsel of your choice. It doesn't speak well for you if the public defender has to withdraw because of circumstances that he really can't get into because of ethical issues, but I can read between the lines and

---

[1] The record contains ten judgment forms from case number 322-2013, for counts two through six and counts eight through twelve. It is unclear from the appellate record how counts one and seven were resolved in this case.

[2] The trial court's order states that Defendant was to serve his sentence on community corrections. We assume that Defendant was on supervised probation but the supervision was conducted by community corrections.

can tell you it's pretty serious if this happens. So what in the world is going on with you?

[DEFENDANT]: I don't feel [that] [appointed counsel] is representing me, Your Honor.

THE [TRIAL] COURT: Okay. Generals, do we [know if] was there an offer made?

[APPOINTED COUNSEL]: Judge, there's no offer in this case. The violation warrant refers to a new charge. He was charged with the felony of aggravated assault. He pled that out in general sessions to domestic assault and, as I said, the State has made no offer.

THE [TRIAL] COURT: Okay. Do you want to represent yourself? That's what is going to happen.

[DEFENDANT]: Yes, sir.

THE [TRIAL] COURT: I've given you -- so what are you going to do?

[DEFENDANT]: I asked [appointed counsel] for a sentencing -- or a violation hearing and he's going to tell me no.

THE [TRIAL] COURT: No. That's something that you are -- don't understand. Do you want a probation violation hearing? We'll get one. [Appointed counsel], I'll allow you to withdraw. We'll have one and you'll represent yourself.

[DEFENDANT]: Yes, sir.

THE [TRIAL] COURT: Generals, you all might want to make a note of that. We will need all our witnesses here.

General Blanton, this is [Defendant]. [Appointed counsel] had to withdraw. I find it very unusual that this has to happen. I'm not going to appoint another attorney for [Defendant]. He's entitled to have appointed counsel, not the appointed counsel of his choice. If he can't get along with attorneys, then that is his problem. We'll reset this, General Blanton, to

June 12th. If you'll have all the witnesses here, and he's representing himself.

The trial court continued Defendant's probation revocation proceeding until June 12, 2017. At the hearing, the trial court admitted certified copies of the affidavit of the violation of probation, the affidavit of complaint, and the guilty plea form. Defendant gave the following sworn testimony:

> Your Honor, I understand, you know, this is my second violation, but after the first violation, I was out for [eighteen] months. I completed nine months of MRT classes. I'm working on my GED.
>
> The only reason -- I went to Vol State and I took the pre-test, and I'm supposed to go back for the regular test, but I caught the charge and I've been in jail since so I couldn't take the regular test. In jail, I'm doing the GED test, trying to get my GED.
>
> Your Honor, I have a full-time job. They told me when I get out of jail I can come back to my job.
>
> The domestic assault, Your Honor, I'm the one who called the police because I was trying to get out of the house. I was trying to get my stuff to get out of the house, but when I went to court, I was going to take it to trial, but they told me if I take it to trial they would charge my wife with a felony and they were going to violate my probation anyway.
>
> So in order to keep my wife out of jail, I took the charge. I didn't want us both to be in jail and then our kids left without somebody. So I just went ahead -- you know, as stupid as it sounds, I went ahead and took a charge anyway, knowing I was violating my probation.

Defendant understood that he had violated the terms of his probation, and he agreed that he "should have some type of punishment." Defendant asserted that he did not assault his wife. The trial court reiterated the facts underlying Defendant's domestic assault conviction from the arrest warrant and affidavit.

Tessa Alyssa Jones, Defendant's wife, testified that, on December 22, 2016, she and Defendant argued because she "told him he couldn't go to the wedding with his mom because she was a manipulator." Mrs. Jones stated that she did not "really remember much after that" because she was not taking medication for her mental health issues. Mrs. Jones stated that she learned that Defendant had been arrested for domestic assault

- 4 -

from her son later that evening. She testified that she went to general sessions court with Defendant and that the Assistant District Attorney assigned to Defendant's case told her that, if she changed her story, the State would prosecute her for filing a false report. Following Mrs. Jones' testimony, the trial court continued the proceeding so that the State could subpoena the law enforcement officer that responded to Defendant and Mrs. Jones' house on December 22, 2016.

On August 7, 2017, Officer Rich Evans testified that he worked as a master patrolman for the Gallatin Police Department. On December 22, 2016, Officer Evans responded to a domestic call at Defendant and Mrs. Jones' residence. Defendant informed Officer Evans that he and his wife had argued over going to a wedding. Defendant stated that he had attempted to leave the residence, but Mrs. Jones "blocked his path" and "sprayed him with a deodorizer." Officer Evans took written statements from both Defendant and Mrs. Jones. Mrs. Jones' statement set out the following allegations:

> Me [sic] and [Defendant] got in to an argument because I told him he couldn't go to a wedding with his mom tomorrow[.] [H]e got upset and told me [that] he hoped that I died[,] called me trash[,] told me he would kill me[,] and at some point he picked up a knife and had it to my throat. I also got hit in the face. After that, he p[o]unded my cousin[']s front door and hit her screen door and we was in the hall way [sic], and he was screaming and I got shoved and my basket and my cousin[']s picture got broke [sic]. In my bedroom, I got choked and shoved into a tote. He came back in to the living[ ]room with a bag of his [clothes] and thr[e]w them onto the floor and got in my face again and choked me with my shirt[.] [S]o I kicked him in his balls and told my son to call the police, but [Defendant] called them instead.

Officer Evans then arrested Defendant. Officer Evans observed a red line across Mrs. Jones' throat, which was consistent with Mrs. Jones' statement that Defendant held a knife to her throat.

After the State concluded its direct examination of Officer Evans, Defendant requested that the trial court appoint counsel to represent him. The following exchange occurred:

> [DEFENDANT]: I'm not okay to proceed without counsel, Your Honor.

THE [TRIAL] COURT: Well, then, I told you what's going to happen. You had counsel, and in my opinion one of the best that you could have, [who] knows more about probation violations than any attorney here, and you were entitled to have an appointed attorney and I appointed an attorney. Under the United States Constitution, you're not entitled to the attorney of your choice. Your motion will be denied. You had an attorney. You may proceed.

[DEFENDANT]: Well, Your Honor, [appointed counsel] told me that I was not allowed a violation hearing.

THE [TRIAL] COURT: You may ask questions of him.

On cross-examination, Officer Evans stated that, when he arrived at the residence, he observed Defendant standing outside. Officer Evans agreed that Defendant looked like "something [had been] done" to Defendant. Officer Evans stated that Mrs. Jones did not inform him that she had mental health issues.

Defendant called Mrs. Jones to testify again. She stated that Defendant was not violent towards her during the four years that she had known him. Mrs. Jones explained that she was prescribed Lexapro and Lamictal and that, in 2016, her insurance stopped paying for her Lamictal prescription, and she began hallucinating. Mrs. Jones testified that she was treated by a psychiatrist at the Mental Health Cooperative and that she harmed herself. When Mrs. Jones realized that Defendant had been arrested for the events of December 22, 2016, she paid Defendant's bond.

Defendant took the stand and acknowledged that he had previously violated the terms of his probation because he failed a drug test and "caught a marijuana charge." The following exchange then occurred between Defendant and the trial court:

[DEFENDANT]: I got into an argument with my wife and I called the police to avoid a situation from happening. I called the police to avoid the situation.

My wife was off her psych meds. She is known to be a self-harmer. And I was out on the driveway for 20 minutes waiting for the police.

If I hit my wife, Your Honor, she would not be with me. Like she told you, she left her last husband for those same reasons. I understand it was wrong for me to take the charge when I didn't do it. I know I violated my probation, and I need time to -- you know, if you give me some time, I

- 6 -

understand that. I'm just asking you not to put me in effect and make me serve a 12.

THE [TRIAL] COURT: Why should I believe you, sir, when you lied under oath to the general sessions judge in pleading guilty? Why in the world should I believe you when you lied in court?

[DEFENDANT]: Your Honor, I did not lie in court. I took the advice of my attorney. My attorney told me to take the plea deal.

THE [TRIAL] COURT: Did you lie when you said that you were guilty of that charge?

[DEFENDANT]: I took the advice of my attorney, Your Honor.

THE [TRIAL] COURT: Did you lie when you said that you were guilty?

[DEFENDANT]: I guess that's one way of looking at it, Your Honor.

THE [TRIAL] COURT: So the answer is yes.

The trial court stated that it did "not place much confidence in [Defendant's] version or [Mrs. Jones'] version [of the domestic assault] under the circumstances[.]" The trial court found that Defendant violated the terms of his probation by pleading guilty to domestic assault. The trial court revoked Defendant's probation and ordered Defendant to serve his sentence in the Department of Correction. Defendant now timely appeals the trial court's decision.

## II. Analysis

On appeal, Defendant argues that he was deprived of counsel during his probation revocation hearings. He also asserts that the trial court erred in determining that he had violated the terms of his probation because the victim in the underlying guilty plea recanted her testimony. The State asserts that Defendant knowingly waived his right to counsel and that it was within the trial court's discretion to determine that Defendant violated the terms of his alternative sentence.

"Although the right to counsel is guaranteed in criminal cases, the right to counsel at a revocation hearing is not constitutionally guaranteed." *State v. Jerry N. Eldridge*,

No. M2004-01080-CCA-R3-CD, 2006 WL 359665, at *4 (Tenn. Crim. App. Feb. 16, 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 789-90 (1973); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *Young v. State*, 539 S.W.2d 850, 854 (Tenn. Crim. App. 1976)), *no perm. app. filed*; *see also State v. Nicholas Goff*, No. W2005-02233-CCA-R3-CD, 2006 WL 2689689, at *4, 6 (Tenn. Crim. App. Sept. 20, 2006), *no perm. app. filed*. However, defendants have a statutory right to representation at probation revocation hearings. Tenn. Code Ann. § 40-35-311(b); *see also State v. Merriweather*, 34 S.W.3d 881, 884-85 (Tenn. Crim. App. 2000). Further, Tennessee Rule of Criminal Procedure 44 provides that "[e]very indigent defendant is entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant waives counsel." Tenn. R. Crim. P. 44(a). Before a defendant can validly waive his right to counsel, the trial court shall "advise the accused in open court of the right to the aid of counsel at every stage of the proceedings" and "determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters." Tenn. R. Crim. P. 44(b)(1). A valid waiver of the right to counsel must be in writing and on the record. Tenn. R. Crim. P. 44(b)(2)-(3).

In addition to affirmatively waiving the right to counsel, a defendant can implicitly waive or forfeit the right to counsel. *See State v. Carruthers*, 35 S.W.3d 516, 547 (Tenn. 2000); *see also State v. Holmes*, 302 S.W.3d 831, 840 (Tenn. 2010). Our supreme court has held that "an indigent criminal defendant may implicitly waive or forfeit the right to counsel by utilizing that right to manipulate, delay, or disrupt trial proceedings." *Carruthers*, 35 S.W.3d at 549. "[A]n implicit waiver may appropriately be found, where . . . the record reflects that the trial court advises the defendant the right to counsel will be lost if the misconduct persists and generally explains the risks associated with self-representation." *Id.* Thus, "compared to an affirmative waiver expressed through words, an implicit waiver is presumed from the defendant's conduct after he has been made aware that his continued misbehavior will result in the dangers and disadvantages of proceeding pro se." *Holmes*, 302 S.W.3d at 840. In contrast, a defendant may forfeit his right to counsel when he:

> engages in "extremely serious misconduct," or engages in an "egregious manipulation" of the right to counsel "so as to delay, disrupt, or prevent the orderly administration of justice." Whether a defendant engages in some form of conduct that justifies a ruling of forfeiture may generally be determined only after an evidentiary hearing at which the defendant is present and permitted to testify. The State bears the burden of establishing that the defendant committed such actions as to justify a forfeiture. Factors relevant to the trial court's consideration include (1) whether the defendant has had more than one appointed counsel; (2) the stage of the proceedings,

with forfeiture "rarely . . . applied to deny a defendant representation during trial"; (3) violence or threats of violence against appointed counsel; and (4) measures short of forfeiture have been or will be unavailing.

*Id.* at 839 (internal citations omitted).

"The trial court's action in matters regarding the appointment and relief of counsel will not be set aside on appeal unless an abuse of discretion is shown." *State v. Huskey*, 82 S.W.3d 297, 305 (Tenn. Crim. App. 2002) (citing *State v. Rubio*, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987)). The determination of whether a defendant has waived his right to counsel and exercised his right of self-representation is a mixed question of law and fact. *State v. Hester*, 324 S.W.3d 1, 29 (Tenn. 2010). This court reviews mixed questions of law and fact de novo, with a presumption that the trial court's findings of fact are correct. *Id.* at 29-30 (citing *Holmes*, 302 S.W.3d at 837).

The State points to *State v. Kenneth Shane Story*, No. M2005-02281-CCA-R3-CD, 2006 WL 2310534, at *5-6 (Tenn. Crim. App. Aug. 9, 2006), *perm. app. denied* (Tenn. Dec. 27, 2006), to support its assertion that the defendant effectively waived his right to counsel. The pertinent facts in *Kenneth Shane Story* are the following:

> [T]he [d]efendant appeared pro se at the violation of probation hearing. At the outset of the hearing the trial court stated, "Mr. Story, your hearing on a Violation of Probation is today. You were to hire a lawyer. Have you done so?" After the [d]efendant responded that he was not able to obtain a lawyer, the Court stated, "All right, you just have a seat right at that table there."

*Id.* at *1. The trial court later revoked the defendant's probation. *Id.* In the opinion affirming the trial court's judgment, this court noted that "the more prudent rule is to appoint counsel in each revocation hearing where a defendant is indigent and seeks counsel." *Id.* at *5 (citing *Gagnon*, 411 U.S. at 790). This court concluded the following:

> In the case under submission, the trial court did not err by not appointing the [d]efendant counsel at the revocation hearing. Furthermore, nothing in the record indicates that the [d]efendant was unaware of a need for counsel. In fact, the trial court reminded the [d]efendant that he was to hire a lawyer and asked if he had done so, and the [d]efendant responded that he was not able to obtain a lawyer. Clearly, the [d]efendant knew he should or could obtain counsel. The [d]efendant is not entitled to relief on this issue.

*Id.* We conclude that this case is not controlling over the current facts, where Defendant was appointed counsel and counsel withdrew due to an unknown conflict with counsel. Further, we decline to follow this precedent because it does not follow the mandates of Tennessee Rule of Criminal Procedure 44.

In *State v. Mark Stephen Williams*, No. E2015-01393-CCA-R3-CD, 2016 WL 3704664, at *1 (Tenn. Crim. App. July 6, 2016), *no perm. app. filed*, this court addressed whether the defendant validly waived his right to counsel at a probation violation hearing. At the hearing, the trial court asked the defendant whether he understood that he had the right to representation and whether the defendant wanted counsel. *Id.* The defendant said "No, sir." *Id.* This court noted that (1) "there was not a written waiver of counsel[,]" (2) "the trial court did not engage in an inquiry into the competence and intelligence of the defendant's waiver of counsel[,]" and (3) the trial court "did not inquire as to the defendant's 'background, experience, and conduct,' . . . or apprise the defendant of the consequences of waiving his right to counsel." *Id.* at *3 (citing Tenn. R. Crim. P. 44(b)(1)(B)). Thus, this court remanded the case for appointment of counsel. *Id.* We will follow this court's precedent in *Mark Stephen Williams* because it upholds the mandatory requirements of Tennessee Rule of Criminal Procedure 44.

Here, there is no written waiver of Defendant's right to counsel in the record. As noted above, Tennessee Rule of Criminal Procedure 44(b)(2) requires a written waiver. Additionally, the trial court did not "determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters." Tenn. R. Crim. P. 44(b)(1). Thus, Defendant did not affirmatively waive his right to counsel. We also conclude that Defendant did not implicitly waive or forfeit his right to counsel. The trial court did not advise Defendant that he could lose his representation with continued misconduct and did not explain the risks associated with self-representation. *See Carruthers*, 35 S.W.3d at 549. Additionally, there is no evidence that Defendant acted so egregiously as to warrant the forfeiture of counsel and the trial court did not make any findings that Defendant's conflict with counsel was designed to delay or manipulate the probation revocation proceedings. *See State v. James Richardson Reece*, No. M2011-01556-CCA-R3-CD, 2013 WL 1089097, at * 20 (Tenn. Crim. App. Mar. 14, 2013) (concluding that the defendant did not forfeit the right to counsel because "the trial court did not make any findings that defendant's behavior was calculated to manipulate, disrupt, or delay trial or obstruct justice"), *perm. app. denied* (Tenn. June 17, 2013). Because we conclude that Defendant did not effectively waive his right to counsel, we reverse the judgment of the trial court and remand for appointment of counsel and a new probation revocation hearing. *See Mark Stephen Williams*, 2016 WL 3704664, at *3 (reversing and remanding

the case for appointment of counsel because the defendant's waiver of the right to counsel at his probation hearing was ineffective).

### III. Conclusion

After a thorough review of the facts and applicable case law, we reverse the judgment of the trial court and remand the case for appointment of counsel and a new probation revocation hearing.

_____
ROBERT L. HOLLOWAY, JR., JUDGE