FILED

12/30/2021

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 16, 2021

## STATE OF TENNESSEE v. TIMOTHY HOWARD SMARTT

**Appeal from the Criminal Court for Hamilton County
Nos. 277012, 292896, 304933    Tom Greenholtz, Judge**

_____

### No. E2021-00125-CCA-R3-CD
_____

The defendant, Timothy Howard Smartt, challenges the revocation of his community corrections placement on grounds that the sentence in case number 277012 expired before the issuance of the revocation warrant and that the court erred by ordering that he serve the balance of the total remaining sentences in confinement. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and JILL BARTEE AYERS, JJ., joined.

Alan C. Blount (on appeal) and Rebecca J. Stern (at hearing), Chattanooga, Tennessee, for the appellant, Timothy Howard Smartt.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Neal Pinkston, District Attorney General; and Leslie Longshore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The history and relationship among the cases at issue in this appeal is complex, perhaps best described as a miasma of excesses. We attempt to untangle them here.

*Case Number 277012*

In July 2010, the Hamilton County Grand Jury charged the defendant with one count of initiating the process for manufacturing methamphetamine and one count of possession of drug paraphernalia in case number 277012. The defendant was arrested on September 16, 2010, and, on January 19, 2011, he pleaded guilty to initiating the process

for manufacturing methamphetamine in exchange for a sentence of 8 years' probation to commence on February 11, 2011, and dismissal of the remaining charge. The trial court awarded jail credit for the period from September 16, 2010, to January 19, 2011.

On February 8, 2012, a probation violation warrant issued, alleging that the defendant had violated the terms of his probation by failing to pay his fees and by absconding. The defendant was arrested on the warrant on February 10, 2012. A February 24, 2012 addendum to the violation warrant alleged that the defendant had further violated the terms of his probation by garnering a new arrest for possession of a prohibited weapon (brass knuckles) and being out of the county without the permission of his probation supervisor. On June 25, 2012, the trial court revoked the defendant's probation and ordered him to serve 11 months' and 29 days' incarceration before being returned to probation. The court also extended the term of probation by two years, making the new term of probation in case number 277012 10 years. The court awarded jail credit for the period from February 10 to June 25, 2012.

On February 8, 2013, a probation violation warrant issued, alleging that the defendant had violated the terms of his probation by failing to pay fines and costs and absconding. The violation report that formed the basis for the warrant indicated that the defendant had been released from the workhouse on August 8, 2012. The defendant was arrested on the violation warrant on March 8, 2013. On May 13, 2013, the trial court revoked the defendant's probation and ordered him to serve 11 months and 29 days before being returned to probation. The court awarded the defendant jail credit for the period from March 8 to May 13, 2013.

On April 29, 2014, a probation violation warrant issued, alleging that the defendant had violated the terms of his probation by garnering new arrests for the possession of drugs and drug paraphernalia, theft, and failing to report his new arrests. The violation report stated that the defendant had been released from confinement in November 2013. The defendant was arrested on May 24, 2014. On October 28, 2014, the trial court revoked the defendant's probation and ordered him to serve the balance of his sentence in confinement. The court also ordered that the defendant be furloughed into the Hamilton County Drug Court program as soon as the necessary preparations were made. The court granted jail credit for the period from May 24 to October 28, 2014.

The defendant was furloughed into the drug court program on December 4, 2014. Based upon the trial court's order, the defendant was to remain incarcerated between the time of the revocation and his furlough, for which period he would be entitled to credit for time served, but we can find no award for these days in the record. On February 25, 2015, a drug court violation warrant issued, and the defendant was arrested that same day. On March 12, 2015, the trial court again ordered the defendant furloughed to drug court,

but no award of credit against the sentence in case number 277012 for the time served between his arrest and the furlough order appears in the record.

On May 4, 2015, a second drug court violation warrant issued. The defendant was arrested on July 29, 2015. On September 3, 2015, the trial court revoked the defendant's drug court placement and ordered him to serve 11 months and 29 days before being placed on enhanced probation. The court also ordered that he be given "credit for time served" and noted specifically the period between July 29 and September 9, 2015, but did not include credit for the time between the second furlough into the drug court program and the May 4, 2015 violation warrant.

No further action occurred in case number 277012 until August 23, 2018 when a "Probation Order" was issued for case numbers 277012, 292896, 301729, and 304933 that imposed a total effective period of probation of 20 years to commence on September 4, 2018. Probation violation reports for case number 292896 state that the defendant was released from confinement and returned to probation on February 15, 2016. At a July 18, 2019 hearing to dispose of violation warrants filed in case numbers 292896, 301729, and 304933, the State indicated to the trial court that case number 277012 had been "inadvertently" omitted from the probation violation report and that "the State hasn't filed on that number technically." The court told the State that it could not revoke the defendant's probation in case number 277012 due to a lack of notice. During that hearing, the defendant asked the court to place him into a program supervised by Rick Ingram. The trial court stated that "it is crystal clear that supervised probation does not work" but entertained the idea of "a community corrections placement." The court granted the defendant additional time "to investigate" a community corrections placement and reset the case for August 7, 2019.

On July 31, 2019, an addendum to the violation report originally filed on April 26, 2019, added case numbers 277012 and 301729 and indicated specifically that "[d]ocket 277012 has been inadvertently left off of previous violations." A violation warrant issued for case number 277012 on August 7, 2019. An order filed on August 15, 2019, includes case number 277012 and indicates that "probation is partially revoked and [d]efendant's remaining time is to be served upon Southeast Tennessee Community Corrections Program." The record does not indicate that the trial court intended that the defendant be released to probation supervised by the community corrections program under the terms of Code section 40-36-106(f), which states that the trial court may "permit[] an eligible defendant to participate in a community-based alternative to incarceration as a condition of probation in conjunction with a suspended sentence." *See* T.C.A. § 40-36-106(f). Instead, the record, considered as a whole, indicates that the court sentenced the defendant to a community corrections placement following the revocation. *See id.* §§ 40-35-310(b); -311(e)(1)(B). The fill-in-the-blank revocation order has check marks next to

the lines for "Full Revocation" and "Restore to Probation," but "Probation" has been marked through and replaced with "CC," suggesting that the defendant was to be restored to community corrections even though he was not previously sentenced to a community corrections placement. That same order indicates in the "Special Conditions" portion: "Assign to Southeast TN Comm. Corrections Prog." The order "assign[s]" the defendant to the community corrections program. The order granted the defendant jail credit for the period running between August 9 and 12, 2019. A written order filed on August 15, 2019, provides that the defendant's "probation is partially revoked and [d]efendant's remaining time is to be served upon Southeast Tennessee Community Corrections Program."

A subsequent violation report filed on May 26, 2020, is styled as a community corrections violation. The court's revocation order filed on January 5, 2021, is styled as an "Order Finding Violation of Community Corrections and Ordering Revocation of Sentences" and includes a finding that the parties agreed in August 2019 that the defendant's "sentence would be served on the . . . Community Corrections Program after time served." These filings confirm that the defendant was serving a sentence of community corrections at the time the May 2020 violation warrant was filed. In consequence, he would be entitled to "street time" for the period between his placement on community corrections on August 12, 2019, and the filing of the violation warrant on May 28, 2020. The defendant was arrested on June 10, 2020, and incarcerated until his community corrections placement was revoked on January 5, 2021, for which period he would be entitled to jail credit towards case number 277012.

*Case Number 292896*

In September 2014, the Hamilton County Grand Jury charged the defendant with theft of property valued at less than $500, simple possession of alprazolam, marijuana, and methamphetamine; possession with intent to sell hydrocodone, clonazepam, and diazepam; possession of drug paraphernalia; and failure to appear. On October 28, 2014, the defendant pleaded guilty pursuant to a plea agreement with the State to theft under $500, possession with intent to sell hydrocodone, and failure to appear in exchange for concurrent sentences of 11 months and 29 days, six years, and two years, respectively, and dismissal of the remaining charges. Additionally, the agreement called for the defendant to be furloughed into the Hamilton County Drug Court program. The judgment forms for case number 292896 awarded the defendant jail credit for the period from April 19 to October 28, 2014, despite that the court had already awarded the defendant jail credit for this same period toward the sentence in case number 277012 and that the sentence in case number 292896 was aligned consecutively to the sentence in case number 277012.

As indicated, the defendant was furloughed to the Hamilton County Drug Court on December 4, 2014, and a violation warrant issued on February 25, 2015, alleging

-4-

that the defendant had violated the conditions of drug court. The defendant was again furloughed to drug court on March 12, 2015. The defendant's drug court placement was revoked on September 3, 2015, and he was sentenced to serve 11 months and 29 days before being returned to enhanced probation. Amended judgment forms for case number 292896 filed on September 10, 2015, provided that the defendant had been "removed from drug c[our]t" and that he was to "serve 11 mos. 29 days w/credit for time served; balance on supervised probation." The amended judgment forms also gave the defendant credit for the periods from April 19 to 21, 2014, and February 25 to September 10, 2015, despite having awarded this same credit in case number 227012 and despite the consecutive alignment of the sentences.

On August 18, 2016, a probation violation warrant issued that listed only case number 292896. Following the defendant's January 9, 2017 arrest, an amended violation warrant, which again included only case number 292896, issued on January 30, 2017. The trial court revoked the defendant's probation in case number 292896 on September 13, 2017, and returned him to probation with credit for time served. The fill-in-the-blank orders revoking probation in each count reflect that probation was revoked and that he was given credit for "time served," but none of the orders reflects whether the revocation was a "Full Revocation" or a "Partial Revocation." Additionally, none indicates the actual disposition following revocation. The orders awarded the defendant jail credit for the period from January 9 to September 13, 2017.

A probation violation warrant issued in case number 292896 on January 5, 2018. The violation report that formed the basis for the warrant indicated that the defendant was released from confinement on September 14, 2017, and that he tested positive for the use of methamphetamine, amphetamines, and oxycodone at his probation intake appointment on October 5, 2017. The defendant remained on probation until the issuance of the violation warrant in January 2018 but continued to perform very poorly, continuing to use drugs, failing to report, failing to pay fees and costs, and failing to comply with drug treatment opportunities extended to him. The defendant was arrested on March 1, 2018, and an amended violation warrant issued on April 25, 2018, alleging that the defendant had further violated the terms of his probation by being charged with attempting to possess contraband in a penal facility. The court disposed of the probation violation in case number 292896 as part of a global "Probation Order" that purported to cover case numbers 277012 (despite that no violation warrant had issued in this case), 292896, 301729 (no information about this case appears in the record prior to this order), and 304933 (a new case that we will consider in more detail below). That order, entered on August 23, 2018, imposed a total effective period of probation of 20 years, ordered the defendant to remain in jail until September 4, 2018, to "complete Miracle Lake," and to pay "restitution as ordered." The plea documents signed by the defendant relate only to case numbers 292896 and 304933.

Neither the Probation Order nor the individual revocation orders entered for each count of case number 292896 reflects an award of jail credits.

A probation violation warrant issued in case number 292896 on May 9, 2019, based upon an April 26, 2019 violation report that alleged that the defendant had violated the terms of his probation by overdosing on methamphetamine and heroin while visiting a patient at Erlanger Hospital. The defendant was arrested on May 27, 2019. An addendum to the violation report added case numbers 277012 and 301729 and indicated that "Docket 277012 has been inadvertently left off of previous violations." On August 12, 2019, the trial court revoked the defendant's probation in case numbers 277012, 292896, and 304933 and, as explained above, placed the defendant on community corrections for the balance of his sentence. A community corrections violation report issued on May 26, 2020, alleging that the defendant had garnered new arrests for theft and drug possession and that he had absconded and missed his curfew. A community corrections violation capias order issued on May 27, 2020, and an arrest warrant issued the following day. The defendant was arrested on June 10, 2020, and his community corrections placement in case number 292896 was revoked on January 5, 2021.

*Case Number 301729*

Little information about this case appears in the record on appeal. The case is referenced for the first time in the Probation Order filed on August 23, 2018, where it is listed alongside case numbers 277012, 292896, and 304933. It is not referenced again until it is mentioned in the "Addendum to Violation of Probation" issued on July 31, 2019. That addendum indicates that the defendant pleaded guilty in case number 301729 to theft of property valued at $1,000 or more but less than $10,000 and possession of methamphetamine on September 13, 2017, in exchange for a sentence of "two years with 11/29 consecutive on state probation concurrent with his other docket numbers." No indictment, plea documents, or judgment forms for case number 301729 appear in the record. The only documents filed on September 13, 2017, that appear in the record relate to the revocation of the defendant's probation in case number 292896. An affidavit of complaint appended to the January 30, 2017 amended violation warrant in case number 292896 includes misdemeanor charges relating to the theft of property and possession of a controlled substance, but it is not clear that these charges are the same as those from case number 301729. The case number next appears in an addendum to the April 26, 2019 probation violation report, where it is alleged that case number 301729 should have been included in the probation violation warrant issued on January 5, 2018. The revocation order for Counts 2 and 7 of case number 301729 was appended to the community corrections violation report filed on May 26, 2020. That order reflects the revocation of original sentences of two years' probation for a conviction of theft of property valued at $1,000 or more but less than $10,000 and 11 months' and 29 days' probation for a

-6-

conviction of simple possession of methamphetamine. That order also grants the defendant jail credit for the period from May 28 to August 12, 2019, despite that a separate order grants the defendant jail credit for August 9 through 12, 2019, in case number 277012 and that, per the revocation orders, the sentence in case number 301729 was aligned consecutively to case number 277012. The August 23, 2018 Probation Order, however, states that "301729 is conc[urrent] w/ all." As indicated, the community corrections violation report filed on May 26, 2020, lists case number 301729. Similarly, the community corrections violation capias order, filed on the following day, lists case number 301729. None of the community corrections violation warrants filed on May 28, 2020, however, include case number 301729 and were issued only in case numbers 277012, 292896, and 304933. The 53-page written order revoking the defendant's community corrections placement, which was filed on January 5, 2021, and which contains 162 footnotes, makes only a single mention of case number 301729: "There is a fourth case, Case No. 301729, that has convictions and sentences that are also wrapped up in these events. However, the sentences in this case are running concurrently with the longer sentences in the other cases and do not affect the disposition herein." It is not clear whether, by this remark, the court intended to convey that the two-year effective sentence in case number 301729 had expired.

*Case Number 304933*

In May 2018, the Hamilton County Grand Jury charged the defendant in case number 304933 with one count of burglary of a business and one count of theft of property valued at $10,000 or more but less than $60,000. Plea documents reflect that on August 23, 2018, the defendant pleaded guilty as charged in exchange for concurrent sentences of four years' probation to be served consecutively to the sentence imposed in case number 292896. The documents also provided that the defendant was to be released from custody on September 4, 2018, "to complete Miracle Lake as a condition of probation." Case number 304933 was also mentioned in the August 23, 2018 Probation Order that, as indicated, imposes a total sentence of 20 years' probation for all of the defendant's then-active cases.

A probation violation report issued on April 26, 2019, but listed only case number 292896. A probation violation warrant issued on May 9, 2019, listed case numbers 292896 and 304933. An addendum to the violation report added case number 304933, and the defendant's probation was revoked on August 12, 2019, and he was sentenced to community corrections. The community corrections violation report, capias order, and warrants issued in May 2020 all included case number 304933.

*Pre-Hearing Summary*

Thus, prior to the community corrections violation hearing held in November and December 2020, the defendant was serving a total effective sentence of 20 years' probation as follows:

Case number 277012: eight years to be served as 10 years' probation following a two-year extension of the probationary term in June 2012

Case number 292896: six years' probation to be served consecutively to case number 277012

Case number 301729: two years' probation, alignment unclear from the record

Case number 304933: four years' probation to be served consecutively to case numbers 277012 and 292896

*Hearing*

The trial court conducted a bifurcated probation violation hearing on November 10 and December 18, 2020, via video conference.[1]

Tabitha McDermott, a case officer with Southeast Tennessee Community Corrections, testified that she had supervised the defendant "prior to him being transferred." Ms. McDermott testified that the defendant had struggled to comply with the terms of his community corrections placement because of his drug addiction. The defendant admitted having used methamphetamine in December 2019. He was sent to Buffalo Valley in December 2019 and successfully completed the drug rehabilitation program there in January 2020. Following his return from Buffalo Valley, the defendant asked that his supervision be transferred to Dayton, Tennessee, and "our office did the transfer form and transferred [the defendant] over there to the separate program where he was under Mona Masters'[] supervision." Ms. McDermott testified that, in addition to the rehabilitation program at Buffalo Valley, the defendant had completed a rehabilitation program at Miracle Lake in 2018 before being assigned to community corrections.

---

[1]    In response to the COVID-19 pandemic, the Tennessee Supreme Court suspended all in-person court proceedings on March 13, 2020. *See In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020) (Order). The court later modified "the suspension of in-person court proceedings, with appropriate safeguards," to include the continued and increased use of, among other things, video conferencing. *In Re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Apr. 24, 2020) (Order).

Mona Masters, a case officer for the Twelfth Judicial District Community Corrections program, testified that she began supervising the defendant following his move to Rhea County. Ms. Masters met with the defendant on three occasions, all in February 2020. During his February 6, 2020, intake visit, the defendant tested positive for the use of opiates, and the defendant told Ms. Masters that he had been given Dilaudid during a recent hospital stay. She said that she had asked for documentation to support his claim but had never received it. On February 24, 2020, Ms. Masters attempted to conduct a home visit at the address the defendant had provided, but "it appeared to be nobody lived there." She attempted to call the landlord to determine whether the defendant actually lived at the address, but "was unable to get a call back."

Someone telephoned Ms. Masters on February 26, 2020, and told her that the defendant was in the hospital. The defendant's girlfriend telephoned Ms. Masters on March 4 and 12, 2020, and reported "that he was once again in the hospital." Ms. Masters was unable to obtain any documentation to establish the veracity of this report. Ms. Masters attempted a second home visit on March 26, 2020, and noted that the "[r]esidence appears abandoned, no one home." Thereafter, Ms. Masters contacted Ms. McDermott to begin the process of moving forward with a community corrections violation report.

Ms. Masters testified that her agency made several adjustments in April 2020 in response to the COVID-19 pandemic, including "video reporting" and conducting in-person reporting and drug testing "only on an as-needed basis." Despite the changes, the defendant did not report to Ms. Masters in any form beyond February 19, 2020.

Shannon Morgan, program coordinator for the Hamilton County Recovery Court, testified that an assessment "for risk and need" completed by the defendant indicated that the defendant "would be considered high risk and would be someone that we would, per the score, accept into the drug court program." Ms. Morgan met with the defendant, and he communicated "his desire to join the drug court program" and "the needs that he thinks that he has and his intentions for sobriety." The defendant acknowledged "that he has a significant drug addiction issue and does want help for that problem." Ms. Morgan testified that, should the defendant be admitted into the drug court program, he would likely be placed "in inpatient treatment" followed by living in a recovery residence. Ms. Morgan said that the defendant had expressed a willingness "to do anything we recommended."

The 38-year-old defendant testified that he had two teenaged sons, both of whom were in the custody of their mother, and a 14-month-old daughter with special needs, who was in State custody at the time of the hearing. He explained that his daughter's mother also suffered from addiction issues and was "going through recovery" and attempting to regain custody of their daughter. The defendant said that both of his parents

died as a result of drug overdoses and that the only other family member with whom he was close was in recovery for drug addiction. Following his mother's death, he lost his home, his grandfather died, and his daughter was born. The defendant himself overdosed sometime thereafter and was then admitted into Buffalo Valley for addiction treatment.

The defendant admitted that he had failed to complete a previous drug court placement, saying that the drug court team at the time "was super aggressive and I wasn't ready to take advice, to be honest." He insisted that things would be different should he be admitted to the program again because he had "lost everything that I love in this world." The defendant said that he wanted "a chance to salvage the things I got left that I love and do the right thing." He insisted that he had "hit absolutely rock bottom" and that he was "willing to do whatever it takes" to get "my life back."

The defendant said that he had discussed spending the balance of his sentences in confinement so that he would having nothing hanging over his head, but he insisted that "there's nothing but drugs" in prison. He said that it was easy to obtain drugs while incarcerated and that he was sure he would lapse into drug use if sentenced to incarceration. He acknowledged that "[u]ntil about two months ago" he was using drugs on a regular basis despite being incarcerated.

The defendant testified that he went to the emergency room on February 26, 2020, because he had "an infection, cellulitis, in my legs and my feet." He said that he was not admitted to the hospital on that date. When he was "still having trouble and infection" on March 4, 2020, he went to the emergency room at East Ridge Hospital. The defendant said that he was not admitted to the hospital on that date but was admitted on March 12, 2020, when he spent a single night.

During cross-examination, the defendant said that he did not report to Ms. Masters following his release from the hospital in March 2020 because he "still had the infection" and "could barely walk." He said that he was evicted while he was in the hospital "and that's why there wasn't no one there" when Ms. Masters conducted the home visit. When asked if his eviction was the reason he stopped reporting, the defendant replied that "[a]ctually, [Ms. Masters] was super aggressive," which attitude led him to make the wrong decisions. He said that, in contrast to Ms. Masters' "super aggressive" demeanor, Ms. McDermott "listened to me, was willing to help me, and I had a great relationship with her." He acknowledged that he had attended more than one drug rehabilitation program but said that "those are short-term programs. I need a long-term that has housing after it." He said that, without "housing to go to," he would be in "an unhealthy environment where I can't utilize the tools that I've learned because it's in my face."

-10-

The defendant reiterated that while a sentence of confinement would resolve his immediate housing need, it would do little to address his addiction issues because "there's drugs there just as bad." He acknowledged that he had gotten clean while in the workhouse but insinuated that that was only because he had "a hopeful chance of getting out." He added that "[a]t the end of 14 years I'm still going to be put out and nowhere to go, no housing." He said that when released on probation, "I have no family, nowhere to go, no address, and it's not [d]oing me good just be putting me out there with no address and I'm jumping place to place." He said that he wanted the "chance to be able to have housing to where I don't have to worry about nowhere to sleep or go."

The defendant admitted that he had pleaded guilty to the unauthorized use of a vehicle in the general sessions court. He explained that he and his girlfriend had gotten a ride from a friend to a motel and that, after confirming that they would be staying there for the night, he went back out to the friend's vehicle to retrieve their belongings. The friend also asked the defendant to bring him "a container" from the vehicle. While the defendant was retrieving the items from the vehicle, the police arrived, discovered that the vehicle had been reported stolen, and arrested the defendant. The container that allegedly belonged to the friend contained drugs. The defendant admitted that both he and his girlfriend had used methamphetamine and heroin despite that they had their infant daughter with them. He claimed that they were taking care of their daughter despite using drugs, saying, "Just because I was on drugs I might not have give her my full attention, but I still had good intentions." He understood that "[t]hat's the reason we lost our daughter, and I take full responsibility for that."

Upon questioning by the court, the defendant admitted that he had not reported to Ms. Masters after his March 12, 2020 hospital stay but insisted that he "was going to plan on" turning himself in after he found a place for his family to stay. He said that he "always had good intentions of turning myself in, and it was always on my mind" but that it got put "on the back burner" when he started getting high again. He admitted that absconding had been a basis for each of his previous violations and that he had not turned himself in on any of those previous occasions. When the trial court noted the similarity between the conditions of a community corrections placement and the conditions of a drug court placement and asked the defendant how he could fail at one but succeed at the other, the defendant again insisted that a lack of housing was the issue. He again noted Ms. Masters' "aggressive" personality and blamed it for his inability to develop a relationship with her.

At the conclusion of the hearing, defense counsel urged the trial court to place the defendant into the drug court program. The State asked the court to place the balance of the sentences into execution. Defense counsel stated that the defendant had "practically flattened his time" and that it was not her opinion that a short period of time—only about

a year by her calculation—would benefit him much. The prosecutor agreed that the defendant had approximately "2,500 days built" against his sentences. The trial court took the matter under advisement.

In a 53-page written order, the trial court found that the defendant had violated the terms of his release and revoked the defendant's community corrections sentence. The court noted that the defendant had repeatedly violated the terms of his release into the community despite having availed himself of a number of drug rehabilitation programs. The court agreed that the defendant's failure to abide by the terms of his release was driven by his drug addiction but concluded that "compelling circumstances do not exist" to warrant "additional chances in yet another community-based solution, particularly in one that has already been tried and has not been successful." The court ordered "each of the unexpired sentences into execution." The court granted the defendant "credit for time served in pretrial or prehearing custody" and for the time he spent on community corrections "from his assignment on August 14, 2019, through the issuance of the probationary capias on May 27, 2020, plus any other credits earned and retained by the [d]efendant."

In this timely appeal, the defendant asserts that the trial court abused its discretion by revoking his community corrections placement in case number 277012 because the sentence in that case expired before the violation warrant issued in that case. As to the remaining cases, the defendant contends that the trial court erred by ordering those sentences into execution, arguing that a drug court placement would have better served both the defendant and the community. The State avers that the trial court did not err.

*Analysis*

We consider first the defendant's assertion that the sentence in case number 277012 expired prior to the issuance of the violation warrant on May 28, 2020. The defendant did not raise the issue in the trial court, and the court did not address the issue in its revocation order. That being said, because the defendant's claim is essentially a challenge to the subject matter jurisdiction of the trial court and because the defendant cannot waive subject matter jurisdiction, the timeliness of the challenge is not an issue. *See State v. Demetrius D. Blakemore*, No. W2019-00555-CCA-R3-CD, 2020 WL 864170, at *2 (Tenn. Crim. App., Jackson, Feb. 19, 2020) (citing *State v. Almeko Chiffon Woods*, No. W2007-02025-CCA-R3-CD, 2008 WL 3983107, at *3 (Tenn. Crim. App., Jackson, Aug. 28, 2008) (noting that a defendant has no power to waive subject matter jurisdiction); *see also State v. Nick Defillipis*, No. M2007-01647-CCA-R3-CD, 2008 WL 2388632, at *3 (Tenn. Crim. App., Nashville, June 12, 2008)). If the sentence in case number 277012 had

expired, the trial court's order revoking his community corrections placement and ordering that sentence into execution was void.

The defendant specifically does not challenge the award of jail credits in this case. As best we can determine based solely on the record on appeal, the trial court specifically awarded jail credit in case number 277012 for at least the following periods:

| September 16, 2010 to January 19, 2011 | 126 days |
| February 10, 2012 to June 25, 2012 | 137 days |
| March 8, 2013 to May 13, 2013 | 67 days |
| May 24, 2014 to October 28, 2014 | 158 days |
| July 29, 2015 to September 9, 2015 | 43 days |
| August 9, 2019 to August 12, 2019 | 4 days |

The record also demonstrates that the defendant is entitled to credit in case number 277012 for his incarceration for the following periods:

| January 19, 2011 to February 11, 2011 | 24 days |
| June 26, 2012 to August 8, 2012 | 44 days |
| May 14, 2013 to November 2013 | 172-201 days |
| October 29, 2014 to December 4, 2014 | 37 days |
| February 25, 2015 to March 12, 2015 | 16 days |
| September 10, 2015 to February 15, 2016 | 159 days |
| June 10, 2020 to January 5, 2021 | 210 days |

These were periods when the record reflects that the defendant was serving a period of incarceration imposed following a revocation or being held without bond pending a revocation hearing. The record does not clearly indicate whether Hamilton County Drug Court participants are given "street time" for the time they spend in the program, but, if the court intended to grant the defendant credit for time spent in the drug court program, that credit would cover the following periods:

| December 5, 2014 to February 25, 2015 | 84 days |
| March 13, 2015 to May 4, 2015 | 53 days |

To be sure, nothing in the record awards the defendant credit against the sentence in case number 277012 for this time. He was, however, given credit for the periods from April 19 to April 21, 2014 and February 25 to September 10, 2015, or 201 days, against the sentence in case number 292896 despite that that sentence was to be served consecutively to the one

-13-

imposed in case number 277012. Our case law holds that, where sentences are aligned consecutively, the defendant is typically entitled to credit only on the first sentence because the practical effect of consecutive awards of the full amount of jail credit would be to double the credit. *See, e.g.*, *Timothy L. Dulworth v. Henry Steward, Warden*, No. W2012-00314-CCA-R3-HC, 2012 WL 2742210, at \*2 (Tenn. Crim. App., Jackson, July 9, 2012); *State v. Joyce Elizabeth Cleveland*, No. M2005-02783-CCA-R3-CD, 2006 WL 2682821, at \*2 (Tenn. Crim. App., Nashville, Sept. 14, 2006); *Marvin Rainer v. David G. Mills, Warden*, No. W2004-02676-CCA-R3-HC, 2006 WL 156990, at \*5 (Tenn. Crim. App., Jackson, Jan. 20, 2006); *State v. Hobert Dean Davis*, No. E2000-02879-CCA-R3-CD, 2002 WL 340597, at \*3 (Tenn. Crim. App., Knoxville, Mar.4, 2002). So long as the credits are awarded on only one sentence, there has been no double-dipping.

The defendant is also entitled to "street time" for the period between his transfer to community corrections on August 12, 2019 and the issuance of the violation warrant on May 28, 2020, which equaled 291 days. *See* T.C.A. § 40-36-106(e)(4). He is not, however, entitled to credit for the time he spent on probation. "[T]he time a defendant serves on probation is not counted toward the completion of his or her sentence unless a defendant successfully completes the entire term of probation." *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999) (citing *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999); *Young v. State*, 539 S.W.2d 850, 855 (Tenn. Crim. App. 1976)). We note that the current version of Tennessee Code Annotated section 40-35-310, which became effective on July 1, 2021, gives the trial court discretion to "give credit against the original judgment by the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation or a portion of that amount of time." T.C.A. § 40-35-310(b) (2021).

The original sentence in case number 277012 was eight years to be served on probation. The defendant could have satisfied this sentence by either serving 2,920 days of incarceration or successfully completing eight uninterrupted years of probation. By our calculation, based solely on the record on appeal, it appears that the defendant had served far short of the total number of days of incarceration required to flatten his sentence before the issuance of the May 2020 revocation warrant. Additionally, the record clearly establishes that the defendant's term of probation was anything but uninterrupted. Violation warrants were issued in case number 277012 in February 2012, February 2013, April 2014, February 2015, March 2015, August 2019, and May 2020. Each of these warrants stopped the running of the defendant's term of probation, and, "[e]ach time when the trial court revoked the appellant's probation and then reinstated it, the appellant began serving his original sentence anew." *Hunter*, 1 S.W.3d at 646. Furthermore, as part of the 2012 revocation, the trial court extended the period of probation by two years as authorized by Code section 40-35-308(c), bringing his new probationary term in case number 277012 to 10 years. To allow the defendant to piece together the periods of probation and incarceration in the manner he desires "would allow a defendant to serve his or her

-14-

probation sentence in increments of time chosen at the defendant's convenience" and would, in effect, "reward[]" the defendant "with a reduction on his . . . sentence for abusing the opportunity to serve the sentence without being subjected to total confinement." *Id.* at 648. The record clearly establishes that the defendant failed to complete a 10-year term of probation. Consequently, the trial court retained jurisdiction to revoke the community corrections sentence in case number 277012.

The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1). Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citing *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995)).

"Given the similar nature of a community corrections sentence and a sentence of probation, . . . the same principles are applicable in deciding whether a community corrections sentence revocation was proper." *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). The accepted appellate standard of review of a community corrections revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

In our view, the trial court did not err by revoking the defendant's community corrections placement and ordering "the defendant to commence the execution of the judgment as originally entered." *Id.* § 40-35-311(e)(1)(A). The defendant conceded that he had violated the terms of his release by absconding and by committing the offense of the unauthorized use of a motor vehicle. It is well-settled that the trial court does not abuse its discretion by choosing incarceration from among the alternatives available following the revocation of a community corrections placement. Moreover, the revocation at issue was the ninth revocation in the group of cases at issue, and, contrary to the defendant's

-15-

assertion on appeal, the trial court did not err by considering the defendant's history of supervision when determining that he should serve the balance of his sentences in confinement. The record establishes that the defendant was either unwilling or unable to successfully complete a sentence involving release into the community. That the defendant's indiscretions relate to his drug addiction does not excuse his abysmal record of performance, particularly given that the defendant has already enjoyed the benefit of multiple in-patient drug rehabilitation programs at state expense.

Accordingly, we affirm the judgment of the trial court revoking the defendant's probation and ordering him to serve the balance of his sentence in confinement.

_____
JAMES CURWOOD WITT, JR., JUDGE